HAMLIN et al. v. TOLEDO, ST. L. & K. C. R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1897.)

No. 430.

1. APPEALABLE FINAL DECREES—DENIAL OF RIGHT TO INTERVENE.

Certain unsecured creditors of an insolvent railroad company filed a bill against it to wind up its affairs. A suit for foreclosure of a first mortgage on the road was afterwards brought, and was consolidated with the creditors' bill. Certain holders of preferred stock of the company then petitioned the court to be made defendants, and for leave to file an answer and cross bill. This application was granted, subject to the right of the complainants to move to strike out the answer and cross bill. Complainants did so move, and upon the motion an order was entered denying the petitioners the right to intervene, or to file an answer or other pleading. From this order an appeal was taken. Held, that while the allowance or denial of an application to intervene rests in the discretion of the court, and no appeal could have been taken from the original order letting the petitioners in, yet as their application to come in had been granted, and they were thereby made parties, the order subsequently made, which in effect determined that the answer and cross bill presented no defense and no ground for affirmative relief, and dismissed the parties from the cause, was appealable as a final decree.

2. PARTIES TO RAILROAD FORECLOSURES—PREFERRED STOCKHOLDERS.

Certain holders of securities of an insolvent railroad company, upon the reorganization of the company and the organization of a new corporation, received preferred stock of such new corporation, the certificates of which recited that the holders were entitled to shares of the preferred, nonvoting capital stock of the company; that the stock constituted a lien on the property and net earnings of the company next after the first mortgage; that after January 1, 1888, the stock would carry interest at 4 per cent., payable only out of the net earnings of the company; that such interest should not accumulate, and coupons representing unearned interest must be surrendered on payment in whole or in part of a subsequent coupon; that after January 1, 1891, the certificates might be converted into common stock, and, if not so converted, would become converted 4 per cent. noncumulative stock; and that the company would create no lien on its road, other than the first mortgage, except subject to the lien of the certificates, without the consent of the holders of two-thirds of the preferred stock. Held, that the holders of such certificates were not creditors of the corporation, but were stockholders entitled to a preference over the holders of common stock, both as to dividends and capital, and as such, having an interest antagonistic to the common stockholders, they were proper parties to a suit for the winding up of the corporation and the distribution of its assets.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

The Toledo, St. Louis & Kansas City Railroad Company is an insolvent railroad corporation. In May, 1883, certain unsecured creditors filed a bill in the circuit court of the United States, at Cleveland, Ohio, for the purpose of winding it up and distributing all of its assets justly among its creditors. This first bill was a general insolvent bill, and was professedly filed for the benefit of all creditors, secured and unsecured. A number of other general creditors subsequently joined the original complainants, and were admitted as complainants. Under that bill a receiver was appointed by the circuit court, who took possession of the railroad within the state of Ohio, and engaged in the operation of the same, pending the sale which it was the object of the suit to bring about. Like bills, ancillary in character, were filed by the same complainants within other jurisdictions, and the same receiver was appointed within each jurisdiction. Neither the holders of bonds nor their trustees were made parties to that bill. Subsequently, however, the Continental Trust Company and John M. Butler, claiming to be trustees under a mortgage made by the said company to secure an issue of some $9,000,000 of first mortgage bonds, filed their original bill in the same circuit court for the purpose

of foreclosing said mortgage. The creditors who had filed the original insolvent bill, and such others as had made themselves parties thereto, were made defendants. By leave of the court, Samuel R. Callaway, the receiver in possession of the railroad by appointment under the original creditors' bill, was also made a defendant. This bill was filed December 13, 1893. Thereupon the said Callaway was appointed receiver under this second bill, and an order made consolidating the two suits and ordering that they proceed under the style of "The Continental Trust Company et al. v. The Toledo, St. Louis & Kansas City Railroad Company et al." 72 Fed. 92. After answers had been filed by the company and by the general creditors who had been made parties, but before any decree adjudicating any claim or ordering foreclosure, the appellants presented an application to the court to be allowed to become parties defendant, with leave to file an answer and cross bill. This application was granted, and leave given to file the answer and cross bill accompanying the petition, subject, however, to the right of the complainants to move the court to strike them from the files, or to modify same by striking out every averment putting in issue the validity of, or consideration for, the mortgage bonds secured under the said mortgage. This reservation, as shown by an opinion filed with the record by the district judge, was due to the fact that the mortgagee complainants had not fully examined the said answer and cross bill, and desired time to do so. Complainants availed themselves of this leave thus granted, and subsequently gave notice that on the 26th of October, 1895, they would move the court to strike from the files the answer and cross bill theretofore filed, or move the court to modify said answer and cross bill by striking therefrom every averment raising an issue as to the validity of the mortgage bonds, or the consideration upon which they had been issued. The appellants were also notified that these motions would be supported by certain affidavits of persons whose names were set out therein. These motions, with the affidavits filed in their support, were taken under advisement until February 24, 1896, when an opinion was placed on the files denying the claim of appellants to be creditors of said railroad company, or that, as preferred stockholders, they had any lien valid as against creditors, or any right or interest in or to the property of said company antagonistic to the corporation or to the class of common stockholders. Instead, however, of directing the pleadings to be taken from the files or amended, an order was entered, as on motion of complainants' solicitors, denying appellants the right to intervene or file an answer or other pleading. This decree was not finally entered until May 14, 1896, and from it an appeal was prayed and allowed. At the June session of the last term of this court, a motion was made to dismiss this appeal, which, without an opinion, was overruled. The case is now before us for decision of the questions raised by the errors assigned by complainants upon the decree.

John H. Doyle and Benjamin Harrison, for appellants.

E. C. Henderson and C. N. Fairbanks, for appellees.

Before TAFT and LURTON, Circuit Judges, and SAGE, District Judge.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The allowance or denial of the application of a stranger to be admitted as a party defendant to a pending suit in equity rests in the sound discretion of the chancellor. The denial of such an application is not such a final decree as is the subject of appeal, under section 692 of the Revised Statutes. Such an application is a mere motion in the case, made by one not a party, and is not of itself an independent suit in equity, appealable here. Ex parte Cutting, 94 U. S. 14; Toler v. Railway Co., 67 Fed. 168; Lewis v. Railroad Co., 10 C. C. A. 446, 62 Fed. 218. It follows, therefore, that if no other order had been made in reference to the application of appellants to become parties than that of May 14,

1896, no appeal would lie, and the motion to dismiss should have been sustained. But that is not the situation. The order of October 19, 1895, when properly construed, made the appellants parties defendant, with the right to answer and file a cross bill. The reservation of a right to require that the answer should present only pertinent and material defenses was an unnecessary precaution, inasmuch as it is always the duty of a chancellor, upon proper exception taken, or at the hearing, to see that nothing shall be suffered to remain in an answer which is not called for by the bill, nor material to the defense. Beach, Mod. Eq. Prac. § 408. Such a reservation did not suspend the application of the petitioners, nor leave their motion to become parties undecided. The reason given for this reservation in an opinion filed by the court August 5, 1895, was that the complainants had not had an opportunity of examining the answer. If the court had continued the motion until the pleadings had been examined, and then denied leave to intervene because the answer made out no substantial defense, the denial would not have been ground for an appeal. But this was not what was done. The motion to be allowed to become parties defendant was not held in suspense or continued, but was decided and granted. From the date of that order they were treated by appellees and by the court as parties, and were from that time affected by any decree made in the cause. The reservation of a right to determine, on motion of complainants, if they saw fit to make such motion, how far the answer and cross bill so filed contained matter pertinent to the character of the suit, did not operate as a suspension of the motion to be admitted as parties, or give the court any right to summarily dismiss them as parties. The notice given by complainants under the reservation referred to involved a recognition that appellants were parties, and was a concession in that regard. The questions to arise on that motion concerned the pertinency of the answer and cross bill, and it was error in the court to involve that question with a trial of issues of fact or law dependent upon ex parte affidavits. The questions arising upon these motions so set down upon formal notice for October 26, 1895, were not decided by the court until February 21, 1896. 72 Fed. 92. At that time an opinion was filed upon the merits of the claims asserted in the answer and cross bill, holding that appellants were neither secured nor unsecured creditors, and that, as preferred stockholders, they had no interest which was not represented by the corporation.

The decree then entered, when construed in connection with the decree admitting appellants as parties, should be interpreted as one denying appellants any relief, upon the ground that neither their intervening petition nor their answer and cross bill showed any such interest in the subject-matter of the case as entitled them to maintain their cross bill, or present any issues or set up any rights by answer. This is the construction we placed on the decree at the former term, and, thus construed, the decree was one upon the merits, and appealable as a final decree. If this view of the rights and interests of these appellants had been taken be-

fore they were admitted as parties, and if, as a consequence of such opinion, the court had refused leave to intervene as parties defendant, no appeal would have been permissible. Appellants could have asserted their rights through an original bill, and would not have been concluded by the refusal of the court to allow the assertion of such rights in a cause to which they were not parties. But if, as in this case, the court concludes, upon inspection of an answer or a cross bill filed by one already a party to the cause, that the pleadings are impertinent and show no substantial defense, or no interest which would justify affirmative relief, and for this cause dismisses the pleading and the party from the cause, the action of the court is subject to review. The distinction is material, and is the point upon which we denied the motion to dismiss this appeal. The general rule as to an answer is that nothing should be suffered to remain in it which is neither called for by the bill nor material to the defense. Beach, Mod. Eq. Prac. § 408; Woods v. Morrell, 1 Johns. Ch. 105; Stafford v. Brown, 4 Paige, 88. In Stafford v. Brown, cited above, Chancellor Walworth said that:

"When new matter not responsive to the bill was stated in the answer, if such matter was wholly irrelevant and furnished no sufficient ground of defense, the complainant might except to the answer for impertinence, or might raise the question on the hearing." "Facts not material to the decision are impertinent, and, if reproachful, they are scandalous."

In Woods v. Morrell, supra, Chancellor Kent said that the best rule to ascertain whether matter be impertinent is to see "whether the subject of the allegation could be put in issue or be given in evidence between the parties." He adds:

"The court will always feel disposed to give the answer a liberal consideration on this point of matter irrelevant, and to consider whether it can have any real or proper influence upon the suit."

If the answer and cross bill show in fact that appellants presented no ground for being suffered to appear and defend this consolidated suit, and no interest in the subject-matter of the suit which could not be properly represented by the corporation, then no wrong was done in dismissing them from the case. If, on the other hand, they are creditors of the corporation, secured or unsecured, or have any such peculiar interest as cannot be properly represented by the trustee under the mortgage, or by the corporation which is a defendant, then the case should be remanded and regularly heard. It is not clear that the court permitted the affidavits filed by complainants in opposition to the merits presented by the appellants to influence its action. They were improperly filed, and will not be regarded upon this appeal. Appellants' case must stand or fall upon the averments made by their petition, answer, and cross bill, and upon such exhibits as were filed by them. The case made by the petition, answer, and cross bill was substantially this: They and those acting in concert with them are owners and holders of certificates of preferred, nonvoting stock issued by the Toledo, St. Louis & Kansas City Railroad Company. The total issue of these certificates was $5,805,000, and, of this total, appellants and those represented

by them hold about $2,000,000. They claim that these certificates are money obligations of the railroad company, secured by a lien next after the existing first mortgage bonds of said company. They aver that, though no mortgage was executed and registered to secure said certificates, they constitute a valid equitable mortgage, binding upon the corporation, and upon all creditors who become such with notice of this equitable lien. These certificates are in form alike, and were issued simultaneously with the execution of the first mortgage sought to be foreclosed herein, and were registered by the trustee under said first mortgage. We here set out one of these certificates, and one of the coupons attached:

### Toledo, St. Louis & Kansas City Railroad Company.

No. ———.                    Preferred Capital Stock.                    10 Shares.

This is to certify that James M. Quigley or bearer is entitled to ten shares, of one hundred dollars each, of the preferred, nonvoting capital stock of the Toledo, St. Louis & Kansas City Railroad Company. This stock constitutes a lien upon the property and net earnings of the company next after the company's existing first mortgage. It does not entitle the holder to vote thereon. After the first day of January, 1888, it is entitled to and carries interest at the rate of four per cent. per annum, payable semiannually, represented by interest coupons attached to this certificate. Such interest is only payable out of the net earnings of the company after the payment of interest upon its existing first mortgage bonds, and the cost of maintenance and operation. A statement showing the business of the company for the half of its fiscal year next preceding shall be exhibited at the office of the company in New York to the holder of this certificate, at the maturity of each interest coupon, and the net earnings applicable to such interest shall be reckoned for such period. Such interest is not to accumulate as a charge, and coupons representing unearned interest must be surrendered and canceled on the payment in° whole or in part of a subsequently maturing coupon. At any time after the first day of January, 1891, and before the first day of January, 1898, this certificate may be converted into the common capital stock of the company. If not converted, then to become a converted four per cent. noncumulative stock. The company will create no mortgage of its main line, other than its first mortgage, nor of any part thereof, except expressly subject to the prior lien of this certificate, without the consent of the holders of at least two-thirds of this stock, present at a meeting of which reasonable personal notice must be given to each registered stockholder, and by publication for at least three successive weeks in two leading daily newspapers published in the cities of New York and Boston. One-third of the entire issue of this stock, present in person or by proxy, shall constitute a quorum. Nor will the company increase the issue of these certificates of stock without consent obtained as above. This certificate of stock shall be transferred by delivery, or by transfer on the book of the company in the city of New York, after a registration of ownership certified hereon by the transfer agent of the company.

[Countersigned]

American Loan & Trust Company,

  By ———,                                                 New York, June 19, 1886.

      Secretary.                                                    ———,

                                        President.

                                        ———,

                                     Secretary.

### Shares $100 Each.

(Coupon.)

### The Toledo, St. Louis & Kansas City Railroad Company.

Will pay to bearer on the first day of January, 1898, upon the surrender of this warrant at its office or agency in the city of New York, any amount that may be due hereon under the conditions set forth in the certificate of stock to which this is attached, not exceeding the sum of twenty dollars. Coupon No. 20. No. ———.

                                          Isaac White, Secretary.

Appellants do not strengthen their claim by the lengthy statement of the terms of the reorganization scheme under which their certificates were issued, and to which they were parties. They were originally holders of first mortgage bonds in a corporation which was the predecessor of the present company in the title. They foreclosed, and caused the property to be bid in by Sylvester H. Kneeland, as trustee, for their use. This was done in pursuance of a reorganization plan by which the property foreclosed was to be conveyed to a new corporation. This new corporation was to issue common stock and first mortgage bonds, both of which were to be expended under a contract with Kneeland in the conversion of the old narrow-gauge railroad into a standard-gauge line, and in its extension, and in the purchase of new rolling stock. They say that, during the negotiations between the committee which represented the senior foreclosing bondholders, it was at one time determined that second mortgage bonds should be issued ratably to the said foreclosing bondholders, but that it was finally deemed unadvisable to take that course, and it was therefore agreed that "preferred, nonvoting stock" should be issued to said original holders of bonds of the old corporation; "said preferred stock to be a second lien on all the property of said corporations, subject only to lien of said first mortgage bonds." The certificates exhibited are in precise accordance with the reorganization agreement as stated in the pleading. Whatever their former relation to the property now owned by the defendant railroad company, their present rights must depend upon the interpretation and legal effect of the language contained in the certificates issued in lieu of their bonds. They have received precisely what they bargained for. That they are holders, by virtue of these certificates, of certain interests in the capital stock of this corporation, is to our minds very clear. That is the plain declaration contained on the very face of the certificates themselves. The language is, "that the bearer is entitled to ——— shares of the preferred, nonvoting capital stock," etc. That these shares are declared to carry "interest at the rate of four per cent. per annum, payable semiannually, represented by coupons attached," is not conclusive that they are debt obligations. By calling a dividend "interest," the essential nature of the thing is not changed. We must look deeper. When we do so, we find that this "interest" is to be paid only out of "the net earnings" after paying interest upon the first mortgage bonds, "and the cost of maintenance and operation." We further find that this so-called "interest" is "noncumulative." The net earnings of each year are to be ascertained. If there are none, after paying interest on the first mortgage bonds and operating expenses and expenses of maintenance, no "interest" is to be paid; and when, at any time, such a happy state of affairs is found to exist as a surplus, so that anything can be paid upon the current year's "interest," all past-due coupons for "unearned interest" are to be surrendered. Thus, this "interest" has all the characteristics of a preference, in dividends to the extent of four per cent. per annum, over the common

stock, and none of the marks of interest proper. The agreement that "the company will create no mortgage * * * other than its first mortgage, * * * except subject to the prior lien of this certificate, without the consent of the holders of at least two-thirds of this stock," etc., is entirely consistent with an intent to give to these preferred stockholders a preference over the common stockholders, not only in relation to dividends, but a preference over them in the ultimate distribution of the capital stock. The clear purpose of the provision making this stock a lien second only to the existing first mortgage is to secure to it a preference over the common stock, not only in respect to a limited dividend, but in the ultimate return of capital to those who contributed to it. In the absence of charter regulation or prohibition by the law of the state under which a corporation is organized, a corporation, at its organization, may classify its stock, and provide for a preference of one class over another in respect of both capital and dividends. Cook, Stock, Stockh. & Corp. Law (3d Ed.) §§ 266-278; Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789; Lockhart v. Van Alstyne, 31 Mich. 76; Kent v. Mining Co., 78 N. Y. 159; McGregor v. Insurance Co., 33 N. J. Eq. 181; Miller v. Ratterman, 47 Ohio St. 163, 24 N. E. 496. In providing for the lien of this stock upon the "property" of the company next after the company's existing first mortgage, "property and net earnings" are coupled together. This is significant. The lien given upon "net earnings," is the same kind of lien given on the "property" of the company. In such case it is a preference over the usual rights and interests of another, but subordinate, class of stockholders. Neither do we think that the provision that this stock shall "become preferred four per cent. noncumulative stock," in the event the holder fails to avail himself of the privilege of converting it into common stock within the time allowed, is indicative that it was not preferred stock before the rejection of the option to become common stock. Before that it was a non-voting, noncumulative, preferred stock, with the option to become common stock. After that time this option is lost, and with it the privilege of sharing equally with the other class of stock in the control of the corporation and in the distribution of dividends, without the limitation prescribed as to the amount of such dividend. That seems to be the only result of rejecting the option. There is a wide difference between the relation of a creditor and a stockholder to the corporate property. One cannot well be a creditor as respects creditors proper, and a stockholder by virtue of a certificate evidencing his contribution to the capital of the corporation. Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital. It is a fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of reimbursing the principal of the capital stock until the debts of the corporation are paid. These principles are elementary. Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789; Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 271. The chance of gain throws on the stockholder, as respects creditors,

the entire risk of the loss of his contribution to capital. "He cannot be both a creditor and debtor by virtue of his ownership of stock." Warren v. King, supra. If the purpose in providing for these peculiar shares was to arrange matters so that, under any circumstances, a part of the principal of the stock might be withdrawn before the full discharge of all corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy, and void as to creditors affected thereby. Cook, Stock, Stockh. & Corp. Law (2d Ed.) §§ 270, 271; Chaffee v. Railroad Co., 55 Vt. 110; McCutcheon v. Capsule Co., 19 C. C. A. 108–115, 71 Fed. 787; Morrow v. Steel Co., 87 Tenn. 262, 10 S. W. 495. If that was the purpose of this arrangement, most doubtful language was employed. There is a sense in which every shareholder is a creditor of the corporation to the extent of his contribution to the capital stock. In that sense every corporation includes its capital stock among its liabilities. But that creditor relation is one which exists only between the corporation and its shareholders. It is a liability which is postponed to every other liability, and no part of the capital stock can be lawfully returned to the stockholders until all debts are paid or provided for. The violation of this well-understood principle is a breach of trust, and a creditor affected thereby may pursue the stockholders, and recover as for an unlawful diversion of assets.

Appellants say that it was originally contemplated that the new corporation should pay them for their interests in the foreclosed railroad, and, for that purpose, should issue to them its second mortgage bonds. If that plan had been carried out, there would be no doubt as to their attitude. They would have become creditors. Under it their relation would have been one of no doubt, and notice by registration would have put all who dealt with the corporation on guard. That plan was abandoned. They agreed to take, and did take, the relation of stockholders towards the new company. They surrendered the privilege of voting. That was perhaps a valid agreement between stockholders, though of doubtful public policy. They thereby gave some additional value to the common stock. The latter was the exclusive voting stock, and that was worth something, as railway management now goes. The surrender of the right to vote does not make them creditors. They bargained for preferred shares of stock,—preferred as to dividends and preferred as to capital. For this advantageous position they surrendered the first intention, by which they were to have become secured creditors. If they intended to become creditors, and not stockholders, they adopted a most singular method of defining their relation. We will not presume that their purpose was to adopt a device by which they might withdraw their contribution to the capital stock and leave creditors unpaid. If they intended that, they have not made it plain, and, if it was plain, the device would be invalid as to creditors.

Although appellants were not creditors proper, yet they show a case, on the face of their certificates, entitling them to a preference over common stockholders in relation to both dividends and

capital. Ordinarily preferred stock is entitled to no preference over other stock, in relation to capital. But where there is an expressed agreement giving such a preference, not prohibited by local law nor the charter, we see no reason why it is not a valid contract, as between the corporation and such preferred stockholders, and binding upon the common stockholders. Cook, Stock, Stockh. & Corp. Law, § 278; Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789; Chaffee v. Railroad Co., 55 Vt. 110; In re Bangor & P. S. & S. Co., L. R. 20 Eq. 59; Lockhart v. Van Alstyne, 31 Mich. 79; Kent v. Mining Co., 78 N. Y. 159. Such a preference would not be inconsistent with their relation as stockholders and would not affect creditors. This relation to the corporation and to its common stockholders, in view of the nonvoting provision in this arrangement, makes it eminently proper that these preferred stockholders should be represented by a reasonable number standing for the class, with the right to stand for and defend in respect to their own rights. Bronson v. Railroad Co., 2 Wall. 283–302.

If it be true, as alleged, that the officers and directors of this corporation hold their places through the grace and at the will of those who hold both the common stock and the first mortgage bonds, it furnishes a fair reason for suffering these stockholders to be represented in the defense. We have not considered the questions made by counsel which are based upon the ex parte affidavits touching the actual reorganization agreement. We have undertaken to dispose of this case upon the facts stated in the answer. Neither shall we undertake to decide how far the defenses suggested in the answer and cross bill, against the first mortgage bonds, are available to these stockholders, or to what extent the action of the corporation or the trustees, or committees acting for the preferred stockholders, has concluded them. These are all questions proper to be decided upon a demurrer to the cross bill, or upon final hearing. What we decide is that, although appellants are not creditors, they are entitled, on the averments of their answer, to a preference, in relation to the capital of this corporation, over common stockholders, and that, upon the averments of their answer, they were at least proper parties defendant, having a substantial interest antagonistic to the common stockholders, and therefore not to be properly represented by the corporation. It is a case in principle like that of a common trustee in conflicting mortgages. Such a trustee cannot represent antagonistic rights of contending classes of lienors. When that is the case, each class should be allowed representation. Farmers' Loan & Trust Co. v. Northern Pac. R. Co., 66 Fed. 169–176; Toler v. Railroad Co., 67 Fed. 168–174. The effect of dismissing appellants from the case after admitting them as parties was to deny them the preference over common stockholders, and was such a decree as was final, and therefore appealable. Ex parte Jordan, 94 U. S. 248. For this error the decree will be reversed, and cause remanded to be heard in regular course. Costs of appeal will be paid by appellees.