ARMSTRONG et al. v. UNION TRUST & SAVINGS BANK.

(Circuit Court of Appeals, Ninth Circuit. February 18, 1918.)

No. 3009.

1. CORPORATIONS ⊚⟶566(5)—"CAPITAL STOCK"—NATURE OF—"CERTIFICATE OF STOCK"—"CERTIFICATE OF INDEBTEDNESS."

"Capital stock" of a corporation represents the capital on which it is authorized to do business, and it constitutes one of the assets to which all creditors may look for payment of their demands. Thus an owner of capital stock cannot share in the assets until all of the debts of the corporation have been paid; hence a "certificate of indebtedness," which represents a liability of the company, is wholly distinct from a "certificate of stock."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Stock; Certificate of Stock; First Series, Certificate of Indebtedness.]

2. CORPORATIONS ⊚⟶566(5)—"PREFERRED STOCK"—RIGHTS OF.

"Preferred stock" is merely a particular class of capital stock, being differentiated from the ordinary stock, as endowed with some peculiar quality; but as against creditors a holder of preferred stock cannot reach corporate assets.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preferred Stock.]

3. CORPORATIONS ⊚⟶170—OBLIGATIONS—NAME OF INSTRUMENT.

In determining whether holders of corporate certificates are creditors or stockholders, the name given to the certificate is not controlling.

4. CORPORATIONS ⊚⟶170—CERTIFICATES—PREFERRED STOCK.

Where a corporation, authorized to issue preferred stock, issued certificates reciting that the holder was the owner of shares of preferred stock and entitled to interest on the par value thereof, and providing for a premium in case of retirement within ten years from issuance, the holders of such certificates are preferred stockholders, and not creditors, purchasers of the certificates no doubt expecting to participate in dividends declared after payment of stipulated interest, for it cannot be assumed that the purchasers expected to be creditors, and at the same time share in dividends.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; F. H. Rudkin, Judge.

Bill by the Continental & Commercial Trust & Savings Bank, a corporation, and another, as trustees, against the Fidelity Lumber Company, in which the Union Trust & Savings Bank, a corporation, was appointed permanent receiver. Objections by S. G. Armstrong and others to the receiver's report of claims were overruled, and claimants appeal. Judgment affirmed.

The Union Trust & Savings Bank is receiver of the Fidelity Lumber Company, a corporation. Many claims against the Lumber Company have been filed with the receiver for adjustment. These claims consist of certain certificates, in form as follows: "This certifies that ———— is the owner of ———— shares of the preferred stock of the Fidelity Lumber Company of the par value of one hundred dollars per share, transferable only on the books of the

⊚⟶For other cases see same topic & KEY-NUMBER i all Key-Numbered Digests & Indexes

corporation by the holder hereof in person or by attorney, upon the surrender of this certificate of stock properly indorsed. The owner of this certificate of stock is entitled to interest on the par value hereof at the rate of seven per cent. per annum, payable semiannually on the first days of July and January of each year. The Fidelity Lumber Co. reserves the right, however, to retire this certificate of stock, or any part thereof, at any time after five years and prior to ten years from date of issuance hereof, by paying the holder hereof the par value of this certificate or such part thereof as is retired, together with accrued interest on the part so retired, and a premium of five per cent. thereof, and said company also reserves the right to retire this certificate or any part thereof at any time after ten years from date of issuance, by paying the owner thereof the par value of the part so retired, together with accrued interest thereon. This stock is issued pursuant to resolution adopted at a stockholders' meeting held January 5, 1909." Some of these certificates have what are termed "riders" attached, in effect as follows: "For value received the Fidelity Lumber Co. hereby agrees with ———, owner of preferred certificate of stock No. ——— for ——— shares of the preferred of the Fidelity Lumber Co., to redeem said stock at par, with accrued interest, at the end of five years, from the date of said certificate, upon written request of the holder or his assigns. Fidelity Lumber Co., by A. J. Wilson, Secretary."

The Lumber Company was originally incorporated with a capital stock of $100,000, of which $50,000 was to be preferred at the option of the company. Subsequently the capital stock was increased to $400,000, of which $100,000 was preferred, with optional redemption within five years, and a forced retirement within ten years. Later the capital stock was increased to $500,000, with no provision for preferred stock. On November 15, 1907, a resolution was adopted by the board of trustees authorizing the issuance of $250,000 of preferred certificates of indebtedness. These were to run six years, with interest at 7 per cent., payable semiannually, and to contain a stipulation that the holders should not be stockholders, but creditors. The company was accorded the option of exchanging preferred stock for the certificates, with like terms of payment and like conditions. The stockholders subsequently ratified this action of the board of trustees. On January 25, 1909, the stockholders of the company adopted a resolution increasing the capital stock of the company to $1,000,000, of which 2,000 shares, or $200,000, were to be preferred. The company reserved the right to redeem the preferred stock in language comporting with that contained in the form of certificate above set out. It was further resolved that "said preferred stock shall be issued in such manner that the holder thereof shall not be entitled to vote the same, unless the company has been delinquent in the payment of interest thereon for a period of one year, and in such event such owner shall be entitled to participate in the conduct of the affairs of the company in the same manner as the owner of common stock therein."

Charles P. Lund, of Spokane, Wash., and Faville & Whitney and Frederick F. Faville, all of Storm Lake, Iowa, for appellants.

Hamblen & Gilbert, of Spokane, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The question presented for solution is whether these certificates constitute the holders thereof stockholders of the company, or creditors. If the former, they are not entitled to participate in the assets of the company until the claims of all the creditors are paid in full. If the latter, they would be entitled to share with the other creditors in the

distribution of the funds in the hands of the receiver. The Lumber Company has, without variation designated the obligation for which these certificates were issued as preferred stock, and the certificates themselves denominate it as stock. But, notwithstanding this, it is urged that the name by which the paper is called is not controlling, and that its real character is to be ascertained from the language of the entire instrument and the purposes for which it was given.

[1, 2] The company appreciated very well the difference between certificates of indebtedness and preferred stock, as it, by its board of directors, provided for the creation of each kind of liability. Capital stock has a distinct characteristic, and represents the capital upon which the corporation is authorized to do business. It may be paid up, or merely subscribed. If the latter, the subscriber is liable to the company for its par value, and it constitutes one of the assets of the company, to all of which creditors may look for payment of their demands. A certificate of indebtedness is therefore quite a different thing from a certificate of capital stock in a corporation. The one represents a liability of the company to the creditor; the other a liability to the stockholder, who has contributed of his means to the capital of the corporation, and has become in that respect a party to the venture. If the corporation loses money, he loses in the proportion of his stockholding. If it makes money, his stock is advanced in value. So, if the corporation becomes involved by debt, his stock is reduced in value, and is increased as the debt is lessened. The stockholder must therefore stand aside in the winding up of the business of a corporation until its creditors are paid, before he can share in the assets. One of the characteristics of capital stock, says the Supreme Court, "is that no part of the property of a corporation shall go to reimburse the principal of capital stock until all the debts of the corporation have been paid." Warren v. King, 108 U. S. 389, 396, 2 Sup. Ct. 789, 795 (27 L. Ed. 769).

Thus it is that the right of the stockholder in a failing concern of the kind is subordinated to that of the creditor. Preferred stock is a particular class of capital stock. It bears the same relation to the creditor as other capital stock, and is differentiated from ordinary stock, in that it is endowed with some peculiar quality that the ordinary stock does not possess. As between the holder of such stock and the creditor, his rights to share in the assets of a failing corporation are, like those of the ordinary stockholder, subordinated to the rights of the creditor. Preferred stock does not confer any greater or larger privilege in that respect, and, generally speaking, the holder of such stock is not a corporate creditor.

[3] Concurring in the view that the name by which an instrument is called does not attest its real character, we may inquire whether these certificates render the holders creditors or stockholders—call them preferred stockholders or what not.

[4] The Lumber Company reserves the right to retire the certificates on certain conditions specified, and further agrees to redeem 'said stock" at par, with accrued interest, etc. Looking back of this

to the records of the corporation, we find that the capital stock was increased and fixed at $1,000,000, of which 2,000 shares, or $200,000, were to be preferred. The $200,000 was therefore designed as, and was directly declared to be, a part of the capital stock of the corporation. So that a person, in negotiating for and acquiring this preferred stock, became a contributor to the capital stock of the company. He thus signified his desire and purpose to participate in the venture of carrying on the business for which the company was incorporated, and his willingness to share in the profits it might derive and the losses it might sustain in engaging in the enterprise. These certificate purchasers must be held to full knowledge and appreciation of the real character of their investments, and that they were to become participants in the enterprise, and not mere creditors of the corporation. To intimate otherwise would be to impugn their intelligence. No doubt they expected to share in whatever dividends were declared on the stock after payment of the stipulated interest, and to await the declaration of such dividends until the earnings of the capital stock would warrant such action. They could not well expect such dividends and at the same time claim that their certificates constituted them creditors. Creditors are entitled to no dividends on their demands. What they might get from the company would go in the way of a discharge of the liability, either partially or entirely. The two positions are wholly inconsistent. They must be considered either stockholders or creditors. They cannot be both. Whatever may be the engagement of the company as between its stockholders, it can have no bearing upon the question for determination. From a review of the entire situation we conclude that these certificate holders are stockholders—preferred stockholders, as the certificates indicate—and not creditors. The following adjudicated cases amply support the view we entertain: Hamlin v. Toledo, St. L. & K. C. R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826; Ellsworth v. Lyons, 181 Fed. 55, 104 C. C. A. 1; Spencer v. Smith, 201 Fed. 647, 120 C. C. A. 75; Miller, Executor, v. Ratterman, Treas., 47 Ohio St. 141, 24 N. E. 496; Rider v. Delker & Sons Company, 145 Ky. 634, 140 S. W. 1011, 39 L. R. A. (N. S.) 1007; Inscho v. Mid-Continent Development Co., 94 Kan. 370, 146 Pac. 1014, Ann. Cas. 1917B, 546; Schulte v. Boulevard Gardens Land Co., 164 Cal. 464, 129 Pac. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013; Warren v. Queen & Co., 240 Pa. 154, 87 Atl. 595.

The authorities relied upon by appellants as supporting the contrary view have had our particular attention. The case of Heller v. National Marine Bk., 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212, really supports the view we entertain; so construed by the court in Spencer v. Smith, supra. The cases of W. C. & Phil. R. Co. v. Jackson, 77 Pa. 321, and Williams v. Parker, 136 Mass. 204, involved only preferences between different stockholders; so distinguished in Ellsworth v. Lyons, supra. In Vent v. Duluth Coffee & Spice Co., 64 Minn. 307, 67 N. W. 70, the court held that the agreement involved was in the nature of a conditional sale and permitted recovery. The court was careful to say, at the conclusion of

its opinion: "There is no question here as to the rights of creditors." So in Mulford v. Torrey Exploration Co., 45 Colo. 81, 100 Pac. 596, the court adjudged recovery on a similar agreement, saying that "such a transaction is not prohibited by the statute." But there, as in the Minnesota case, it does not appear that creditors were involved. In Porter v. Plymouth Gold Min. Co., 29 Mont. 347, 357, 74 Pac. 938, 940 (101 Am. St. Rep. 569), the court has this to say:

"We believe the rule to be well settled in the United States by the overwhelming weight of authority and reason that a private corporation may purchase its own stock if the transaction is fair and in good faith, if it is free from fraud, actual or constructive, if the corporation is not insolvent, or in process of dissolution, and if the rights of its creditors are in no way affected thereby."

The rule as thus ascertained illuminates the argument for denying the relief demanded by appellants. It is said in Schulte v. Boulevard Gardens Land Co., supra.

"Undoubtedly a creditor of the corporation would be entitled to hold the conditional purchaser as a stockholder and to insist that the amount of his subscription be made applicable to the satisfaction of the corporate debts."

The cases of Burt v. Rattle, 31 Ohio St. 116, and Savannah Co. v. Silverberg, 108 Ga. 281, 33 S. E. 908, come nearer to appellants' purpose. The first, however, arose under a statute peculiar to that state, and the latter is distinguishable by the terms of the certificate, whereby it is provided that the preferred stock is accumulative, but does not participate in any dividends or profits on the common capital stock over and above an 8 per cent. dividend. But whatever may be said for these cases, they are not in accord with the great weight of authority.

The judgment of the trial court will be affirmed.