OKLAHOMA HOTEL BUILDING CO. v. HOUGHTON et al.

No. 33150. Sept. 28, 1949.
Rehearing Denied April 4, 1950.

*216 P. 2d 288.*

Twyford, Smith & Crowe, of Oklahoma City, for plaintiff in error.

Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, for defendants in error.

DAVISON, C.J. This appeal involves a dispute between the plaintiff in error, who was the garnishee in the trial court, and the defendants in error, who were there the plaintiffs, as to the in-

terpretation and application of the Bulk Sales Law. The parties will be referred to as they appeared in the trial court.

There is little disagreement as to the facts. In 1933, the defendant, Oklahoma Biltmore, Inc., a corporation, was engaged in the business of operating a hotel and coffee shop in Oklahoma City in a building owned by and leased from the garnishee, Oklahoma Hotel Building Company, a corporation. The defendant was then indebted to the plaintiffs, H. B. Houghton and L. H. Houghton, doing business as Houghton Royalties, in an amount of some $4,600 upon a promissory note executed in 1931. Negotiations for the payment of the note culminated in the agreement outlined in the following letter dated June 18, 1934:

"Houghton Royalties,
"Continental Building,
"Oklahoma City, Okla.

"Attention Mr. H. B. Houghton.

"Gentlemen:

"Re: Oklahoma Biltmore, Inc.-

Houghton Royalties Note.

"Supplementing letter of June 7, 1933, addressed to you by J. B. Landers, then Secretary-Corporate Manager, Oklahoma Biltmore, Inc., enclosing a certified copy of Resolution adopted by the Board of Directors of such corporation on June 7, 1933, and also enclosing certificates of stock of such corporation, there is with this letter enclosed the following:

"1. Oklahoma Biltmore, Inc. common stock Certificate No. 248 for 53.81 shares, no par value, bearing date of June 7, 1933;

"2. Oklahoma Biltmore, Inc. preferred stock Certificate No. 193 for 53.81 shares, par value $100.00 per share, bearing date of June 7, 1933.

"These certificates were issued to you in payment of the note heretofore given by Oklahoma Biltmore, Inc., on which there was due, including interest, on June 7, 1933, the sum of $4,573.61, and the shares of stock, both common and preferred, were issued on a basis of a combined value of $85.00 for one share of both classes, which is to say that you are paying $4,573.61 for the stock of both classes evidenced by the enclosed certificates.

"It is our understanding you had a recent conference with Mr. C. F. Colcord, President, Oklahoma Biltmore, Inc., wherein it was agreed that the stock would be re-delivered to you, and that the officers and stockholders of Houghton Royalties will be permitted and privileged to procure Oklahoma Biltmore Hotel service at the annual rate of an amount equalling 20% of the $4,573.61, beginning with June 7, 1933, and continuing until the stock evidenced by the enclosed preferred stock certificate shall have been fully retired. For this purpose, the first year shall be considered as beginning on June 7, 1933, and ending on June 6, 1934, another year beginning on June 7, 1934, and ending on June 6, 1935, and so on during the period of this agreement.

"In keeping with other similar arrangements made with holders of like stock, no more than an amount equal to 20% of the price paid for the stock shall be received in hotel services during any one year of twelve months. You will appreciate the necessity for this arrangement, inasmuch as stockholders could defer re-payment for stock in hotel services until the fifth year and then declare the entire amount due in hotel service, which would cast a very heavy financial burden on the operation.

"Will you please return the note in payment of which the enclosed certificates are issued and delivered to you?

"Very truly yours,

"Oklahoma Biltmore, Inc.

By

"/s/ J. E. Barrett
"Vice-President."

"JEB/h

On April 1, 1937, at a time when the outstanding stock, then owned by plaintiffs, had been reduced to approximately $1,100, and at a time when Oklahoma Biltmore, Inc., was indebted to

garnishee to the extent of about $1,100,-000 secured by chattel mortgage, the following notice was sent to all stockholders of Oklahoma Biltmore, Inc., including plaintiff:

"Notice of Call of
Special Meeting of Stockholders
of Oklahoma Biltmore, Inc.

"To the Stockholders of Oklahoma Biltmore, Inc.

"Pursuant to a request of the President of Oklahoma Biltmore, Inc., notice is hereby given that at the hour of 2:30 o'clock in the afternoon, on Monday, the 12th day of April, 1937, in Room 215, Biltmore Hotel, Oklahoma City, Oklahoma, there will be a special meeting of the holders of common and preferred stock of such corporation for the following purposes:

"1. To consider and take action in respect to the appropriate officials of the corporation executing and attesting an agreement terminating and cancelling the lease contract between Oklahoma Hotel Building Company, as lessor, and Oklahoma Biltmore, Inc., as lessee, on such terms and conditions as will be acceptable between the parties to such lease contract.

"2. In the event an agreement cannot be entered into upon satisfactory terms between the lessor and the lessee of the lease contract referred to in the next preceding paragraph, to consider and take action in respect to what course Oklahoma Biltmore, Inc., should take with respect to the status of the respective parties as to such lease contract.

"3. To consider and take action in respect to negotiating with Oklahoma Hotel Building Company and concluding such negotiations, if possible, with a contract whereby Oklahoma Hotel Building Company will assume and agree to carry out all obligations, contracts, commitments and promises of Oklahoma Biltmore, Inc., and the performance and discharge by Oklahoma Hotel Building Company of any and all trusts of whatsoever kind that may at the time exist between Oklahoma Biltmore, Inc., and others.

"4. To consider and take action in respect to a course to be pursued to bring about a full and complete termination of the management contract between Oklahoma Biltmore, Inc., and Bowman Management, Inc.

"5. To consider and take action concerning a complete surrender by Oklahoma Biltmore, Inc., to Oklahoma Hotel Building Company of all rights, privileges and equities Oklahoma Biltmore, Inc., may have in any contracts, agreements, or understandings with third parties.

"6. To consider and take action in respect to delivering unto Oklahoma Hotel Building Company all assets of whatsoever nature, kind, character and description, irrespective of the location thereof, both tangible and intangible, at the time owned and possessed by Oklahoma Biltmore, Inc., or in which it may have an interest.

"7. To consider and take action in respect to any matter not herein specifically enumerated which may be deemed beneficial for the stockholders of Oklahoma Biltmore, Inc.

"The meeting may be adjourned and recessed from hour to hour and from day to day until all matters shall have been presented, considered and action taken thereon.

"It is the desire of the executive officers of Oklahoma Biltmore, Inc., that this meeting be held jointly with stockholders of Oklahoma Hotel Building Company.

"Dated at Oklahoma City, Oklahoma, this 1st day of April, 1937.

"(signed)    J. E. Barrett
"Secretary, Oklahoma
Biltmore, Inc."

The action of the stockholders in the meeting referred to in the above notice is related in the following letter to stockholders dated May 29, 1937, which was mailed to and personally discussed with plaintiffs, to wit:

"To the Stockholders of Oklahoma Biltmore, Inc.

"At a Special Stockholders meeting held on April 12, 1937, the Stockholders of this Corporation voted to surrender its lease to the Oklahoma Hotel Building Company, and to transfer all

of the property of this Corporation to the Oklahoma Hotel Building Company, the consideration being the cancellation of this Company's debt for rent to the Building Company.

"This is to advise that such purpose has been carried out, effective as of the close of business May 28, 1937.

"The Oklahoma Hotel Building Company is now in charge of the hotel property. Mr. J. E. Barrett, will continue as Manager.

"Under the terms of the contract between the Oklahoma Hotel Building Company, and Dallas Rupe & Sons, who are the owners of the First Mortgage Bonds, and are refunding same, there will be given to the Stockholders of this Company the privilege to subscribe on a pro rata basis to Preferred Stock of the Oklahoma Hotel Building Company at approximately $22.00 per share for each $100.00 share.

"Your Officers and Directors regret that this action has become necessary but feel that the Bondholders and the Oklahoma Hotel Building Company have been as lenient as could be reasonably expected, and that this action will be to the best interest of the Stockholders and to Oklahoma City generally.

"Yours truly,

"Oklahoma Biltmore Inc.
"(signed by) Frank Buttram
President.

"(signed by) J. E. Barrett
Secretary."

Pursuant to the conclusion reached at that meeting, the defendant conveyed to garnishee all of its assets, including the stock of supplies on hand in the coffee shop, executing and delivering a bill of sale covering the same to said garnishee. No attempt was made to comply with the Bulk Sales Law.

Immediately after the transfer of the assets and properties of the defendant, the garnishee went into possession and refused to retire the remainder of plaintiffs' stock. Two and a half years later plaintiffs brought this action against the defendant, making the Oklahoma Hotel Building Company garnishee upon the ground that the stock of merchandise and supplies in the coffee shop was within the meaning of, and its sale governed by, the Bulk Sales Law. The trial court sustained the position of plaintiffs, finding the value of such stock to be $1,000, and rendered judgment in that amount for plaintiffs and against the garnishee. From that judgment the garnishee has appealed urging five separate propositions for reversal.

It was the theory of the plaintiff and the judgment of the trial court that the conveyance by the defendant to the garnishee of all the assets of the defendant included the stock of goods on hand in the coffee shop and, to the extent of the value of such stock, was void as to creditors because of noncompliance with the provisions of the Bulk Sales Law (24 O.S. 1941 §71) and that plaintiff was a "creditor" within the meaning of that act. In this connection, it must be borne in mind that the garnishee had no connection whatever with the defendant other than that of landlord to whom rent was past due in the approximate sum of $1,100,000 which was secured by chattel mortgage upon all the assets of the defendant, and that these assets including the stock of supplies in the coffee shop were conveyed to the garnishee to be applied as a credit upon the indebtedness. No cash consideration was paid.

Plaintiffs' right to any relief against the garnishee, plaintiff in error herein, is dependent primarily and in all events upon the sufficiency of the evidence to establish their position as that of creditors of the defendant below. This is a prerequisite to the right to invoke the application of section 71 of Title 24, O. S. 1941, which is as follows:

"The transfer of any portion of a stock of goods, wares and merchandise, pertaining to the conducting of said business, otherwise than in ordinary course of trade in the regular and usual prosecution of the transferer's business,

or the transfer of an entire such stock in bulk, shall be presumed to be fraudulent and void as against the creditors of such transferrer, and such presumption may be rebutted only by the proposed transferee showing that, at least ten days before the transfer, and in good faith, he made a full and explicit inquiry of his transferrer, and of all antecedent transferrers in sales made within ninety days prior thereto, as to the names and addresses of each and all of his, or their creditors, and that he demanded and received from such transferrer or transferrers, at least ten days before such transfer, a list of the names and addresses of all the creditors of said transferrer or transferrers, showing the amount owing each; which statement must be sworn to by such transferrer, or transferrers, and the oath shall include a declaration that it is a correct list of all his or their, creditors, with the post office address and the amount owing each; and that, at least ten days before the transfer, the transferee notified or caused to be notified, of such proposed transfer, personally, or by registered mail, each of the creditors of such transferrer, or transferrers, of whom such transferee had knowledge, or could with the exercise of reasonable diligence, acquire knowledge; and that such purchase was made by him in good faith, for a fair consideration actually paid."

The briefs of the parties contain an extensive discussion of the application of the statute to debts which are contingent and debts which are unliquidated. The arguments are devoted primarily to distinguishing between the meaning of the word "creditor" as used in the above section and the definition contained in 24 O.S. 1941 §2. However, the determining factor in the situation presented, is not one of what debts constitute the holder thereof a "creditor" within the meaning of the statute, but, rather, is one of what position do the parties occupy as to each other. In other words, is plaintiff a "creditor," or a "stockholder" of the defendant?

For "there can be no debt without a creditor." "It is a fundamental rule of corporation law that one cannot be at the same time both a stockholder and a creditor of a corporation in respect to the same funds hazarded in the corporation enterprise. The two relations are antipodal. This principle is not only rooted in sound public policy, but grows out of the very nature of corporations. The assets represented by corporate stock are the basis of its credit, and provide a fund for the payment of its debts. No part of them may be withdrawn for the purpose of retiring shares until debts are paid. Hamlin v. Toledo Railroad Co., 78 F. 664, 36 L.R.A. 826 (C.C.A. 6)." In re Phoenix Hotel Co. of Lexington, Ky., 83 F. 2d 724.

"The holder of preferred stock is a shareholder in the corporation. He is not a corporation creditor, and has no rights as such. His rights are those of the common shareholder, except as those rights are limited by the statute and the contract, and the additional right to have his dividends paid out of the earnings and his stock redeemed out of the assets in preference to the common shareholder . . . . The purchase of stock of a corporation is not a loan to the corporation of the amount of said stock. None of the elements of debtor and creditor exist." Grover v. Cavanagh, 40 Ind. App. 340, 82 N.E. 104; Cring v. Sheller Wood Rim Mfg. Co., 98 Ind. App. 310, 183 N.E. 674.

"Stock, whether preferred or common, is capital; and, generally speaking, a certificate of stock merely evidences the amount which the holder has contributed to or ventured in the enterprise. Such a certificate, representing nothing more than the extent of his ownership in the capital, cannot well be treated as indicating that he is, by virtue of it alone, also to the same extent a creditor, who may compete with other creditors in a distribution of the fund arising from a conversion of the corporation's assets into money. He cannot, if he is simply an ordinary preferred stockholder, in

the nature of things, so far as third persons are concerned, be at one and the same time, and by force of the same certificate, both part owner of the property and creditor of the company for that portion of its capital which stands in his name." Heller et al. v. National Marine Bank, 89 Md. 602, 43 Atl. 800, 45 L.R.A. 438, 73 Am. St. Rep. 212. See, also, Fletcher Cyclopedia Corporations (Perm. Ed.) §5293.

In Booth v. Union Fibre Co., 142 Minn. 127, 171 N.W. 307, a preferred stockholder brought suit against the corporation to force it to redeem matured preferred stock. The evidence disclosed that the corporation's outstanding indebtedness exceeded its assets and that there was no sinking fund nor accumulated profits. No creditors were parties, but in holding that plaintiff was not entitled to judgment the court said:

"It is directly or substantially held in well-considered cases that the obligation of the corporation to redeem will not be enforced after it has become insolvent and its capital stock depleted; and its refusal will not in such a situation constitute a breach of its agreement to redeem, though it is not in liquidation, and though no creditor is asking relief. McIntyre v. E. Bement's Sons, 146 Mich. 74, 109 N.W. 45, 10 Ann. Cas. 143; Rider v. John G. Delker & Sons Co., 145 Ky. 634, 140 S.W. 1011, 39 L.R.A. (N.S.) 1007; Rowan v. Texas, etc. (Tex. Civ. App.) 181 S. W. 871; Smith v. Foundry Co., 166 Ky. 208, 179 S.W. 205. Some are put upon the ground that the promise to redeem is conditional on the solvency of the corporation when the time to redeem comes; or that preferred stockholders are not entitled as against creditors to prior payment except from profits, or that the property of the corporation cannot lawfully be used in retiring stock when debts exist and insolvency is impending, or loosely upon the ground that a payment to stockholders in such a situation is against public policy."

In Gressinger v. Massey Hardware Co., 139 Kan. 782, 33 P. 2d 128, it was held:

"Holder of preferred stock in domestic corporation is 'stockholder,' and is not 'creditor,' and cannot recover on preferred stock certificate on theory that it is mere evidence of indebtedness."

Although the facts there are not analogous to those in the instant case, it was held in Boxwell v. Lion Oil Co., 250 Ill. App. 127,

"A stockholder of a corporation is not a creditor thereof so as to have standing to attack a transaction between the corporation and another as in violation of the Bulk Sales Act."

The above case was cited in support of the statement that:

"Stockholders of a corporation are not creditors, entitled to attack a transaction of the corporation as violating the Bulk Sales Act." 37 C. J. S. 1335.

No case has been cited dealing with this precise application of the rule, nor do we find any other, upon independent investigation. But there is no reason why the rule generally should not be applied as well to transactions covered by the Bulk Sales Law as to other situations.

Whether or not the certificate, regardless of its designation, makes the holder a stockholder or a creditor has been held by a majority of the courts to be a matter determined by the contract as contained in the certificate, but a

"Preferred stockholder's claim to status of creditor must rest on clear and not doubtful language, and one holding stock certificate, and claiming to be both a creditor and stockholder by virtue of same contract, has burden of proving such anomalous relation." Hazel Atlas Glass Co. v. Van Dyk & Reeves, Inc., 8 F. 2d 716.

The general rule was discussed by this court in the case of Best v. Oklahoma Mill Co., 124 Okla. 135, 253 P. 1005, wherein it was said:

"Preferred stock is merely a particular class of capital stock, being differentiated from the ordinary stock as endowed with some peculiar quality,

but, as against creditors, a holder of preferred stock cannot reach corporate assets. Armstrong et al. v. Union Trust & Savings Bank, 248 F. 268, 160 C.C.A. 346. One of the characteristics of capital stock is that no part of the property of a corporation shall go to reimburse the principal of capital stock until all debts of the corporation have been paid. Id. A preferred stockholder signifies his desire and purpose to participate in the venture of carrying on the business for which the company was incorporated, and his willingness to share in the profits and losses of the enterprise. He has a right to expect to share in whatever dividends may be declared on the stock after payment of the stipulated interest or dividends. He cannot except (accept) such dividends and at the same time make the inconsistent claim that his certificate constitutes him a creditor. There is a sense in which any shareholder is a creditor of a corporation. In that sense every corporation includes its capital stock among its liabilities, but it is a liability which is postponed to every other liability."

It was there held that the certificate although designated "Preferred Stock" was, actually, an absolute and unconditional promise to pay the amount thereof plus cumulative dividends on a definite due date or maturity.

When the facts are analyzed in the light of the rules of law as expressed in the opinions above cited, the case at bar is clearly governed thereby. Several points are very significant. The shares of stock received by plaintiff in payment of the promissory note were not introduced in evidence but were described in the petition as "a certificate . . . for 53.81 shares of the common stock of the defendant, Oklahoma Biltmore, Inc., and one certificate . . . for 53.81 shares of the preferred stock of Oklahoma Biltmore, Inc." They were referred to in practically the same manner in the letter of transmittal copied above and the testimony of the witnesses embraces nothing that would indicate the certificates contained any provision other than is

customary in all common and preferred stock certificates.

It will, at once, be apparent that plaintiffs herein were owners of preferred and common stock in equal amounts. As owners of common stock, there can be no question but that they were stockholders and not creditors. Their most advantageous position is that of preferred stockholders. Since the evidence fails to show any provision of the preferred stock certificate indicating an absolute promise to pay a definite sum on a definite maturity date so as to bring it within the exception to the general rule as was controlling in the Best case, supra, the only distinguishing feature must be found, if at all, in the letter of transmittal. An examination of that letter, copied in full above, discloses no such promise. It was merely a privilege granted to plaintiffs to receive hotel service in redemption of the shares of stock. It takes no imagination to conclude that plaintiffs' privilege of receiving such service was dependent upon defendant being the owner and operator of the hotel during those years. Defendant could, certainly, not furnish such services otherwise. Plaintiffs were, therefore, stockholders and not creditors of the defendant and were not entitled to take advantage of defendant's failure to comply with the Bulk Sales Law.

In addition to the promise to redeem being dependent upon whether or not defendant was a going concern during the years specified for redemption, there is here another important fact as respects the position of the garnishee. It does not stand in the shoes of a volunteer purchaser. It was a creditor of defendant whose unquestioned debt was approximately 1,000 times the purchase price of plaintiffs' unredeemed stock. The entire property, of which the stock of supplies in the coffee shop was a part, was conveyed as a credit upon that indebtedness, reducing it by less than 25 per cent. Theoretically, plaintiffs, by virtue of their ownership of common stock, were

in the position of being themselves debtors of the garnishee. And as owners of ordinary preferred stock they were not entitled to appropriate any of the corporate assets until all corporate creditors, including the garnishee, were paid in full. Under this state of facts, plaintiffs cannot assail the transfer of defendant's property to the garnishee.

Having reached this conclusion, it is unnecessary to discuss the proposition of acquiescence and estoppel, which naturally presents itself in view of the fact that plaintiffs were notified of the stockholders' meeting which was called for the purpose of transferring the property to the garnishee; that plaintiffs' attorneys attended that meeting; that plaintiffs were, immediately thereafter, notified of the transfer; that they waited some two and a half years before bringing any kind of an action to attack the conveyance. It is also unnecessary to discuss the other propositions urged by appellant.

The judgment is reversed and the cause remanded with directions to enter judgment in conformity with the views herein expressed.

WELCH, CORN, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, V. C. J., and GIBSON and HALLEY, JJ., dissent.