**INTERNATIONAL CO. OF ST. LOUIS v. SLOAN et al.**

**No. 2006.**

Circuit Court of Appeals, Tenth Circuit.

July 12, 1940.

Rehearing Denied Aug. 19, 1940.

Writ of Certiorari Denied Nov. 12, 1940.

See 61 S.Ct. 142, 85 L.Ed. ——.

327

Federal Reserve Life Insurance Company, organized under the laws of Kansas, hereinafter called Federal Reserve, was engaged in the life insurance business in Kansas, Missouri, and Indiana; Insurance Investment Corporation, having its principal place of business in Saint Louis, Missouri, was engaged in the business of buying and selling and otherwise dealing in stocks of insurance companies; and Reserve Company, with its principal place of business in Kansas City, Missouri, was likewise engaged in the business of buying and selling and otherwise dealing in stocks of insurance companies. In 1929 Federal Reserve had outstanding 30,000 shares of capital stock of the par value of $10 each, of which Insurance Investment Corporation and Reserve Company owned 5,683 and 8,800 shares, respectively. During that year the Insurance Commissioner of Kansas examined the affairs of Federal Reserve and made a report in which its financial condition was criticized and an impairment of capital and reserves was asserted. To meet that situation, Insurance Investment Corporation made an agreement with Fire Insurance Company of Chicago to advance to Federal Reserve, on behalf of Fire Insurance Company, $300,000 and to take therefor a participating certificate, and to sell to Fire Insurance Company a majority of the outstanding shares of stock of the Federal Reserve. Pursuant to such agreement, Insurance Investment Corporation, on November 18, 1929, advanced to Federal Reserve $300,000 and received therefor the participating certificate which contained these provisions:

"For Value Received, The Federal Reserve Life Insurance Company, a Kansas Corporation (hereinafter called the 'Company') hereby promises to pay to Insurance Investment Corporation, a Delaware corporation, or its assigns, the sum of Three Hundred Thousand Dollars ($300,000.00) together with interest thereon from the date hereof at the rate of six per cent (6%) per annum, payable semi-annually, out of a fund to be created by the company setting aside semi-annually on the 30th day of June and the 31st day of December, all net surplus gains in excess of Fifty Thousand Dollars ($50,000.00) until all principal and interest due under this obligation is fully paid. Net surplus gains in excess of Fifty Thousand Dollars ($50,000.00) shall mean that if at any time the Company has a net free surplus of Fifty Thousand Dollars ($50,000.00) that

William L. Mason, of St. Louis, Mo. (Mason & Flynn, of St. Louis, Mo., on the brief), for appellant.

T. M. Lillard, of Topeka, Kan. (Lillard, Eidson & Lewis, of Topeka, Kan., on the brief), for appellee E. R. Sloan, receiver.

George E. Brammer, of Des Moines, Iowa (Joseph I. Brody, Clyde B. Charlton and Louis A. Parker, all of Des Moines, Iowa, on the brief), for appellee Occidental Life Ins. Co.

Before BRATTON, HUXMAN, and WILLIAMS, Circuit Judges.

**BRATTON, Circuit Judge.**

International Company of St. Louis, hereinafter called claimant, feels aggrieved at the action taken on its claim filed in this proceeding in receivership. The material facts are not in controversy. The

328

all moneys in excess of that sum shall be paid into the fund above specified.

"The obligation of the Company hereunder is a contingent liability, not an absolute promise to pay, but is limited to its firm obligation and covenant to apply the said surplus gains to the making of the payments herein provided for and is not an obligation to be paid out of the general assets of the Company other than the fund mentioned in this certificate."

"In the event of a reinsurance of the business of The Federal Life Insurance Company the reinsuring company shall be bound each six (6) months to pay the savings and profits arising out of the reinsured business (less such part of such savings and profits as may be payable under prior contracts to other persons or corporations) to the then holder or holders of this certificate or any certificate or certificates issued in lieu of this certificate until the full balance of interest and principal due thereon shall have been paid."

On the same day, and for a valuable consideration, Insurance Investment Corporation assigned and delivered such certificate to Fire Insurance Company, and also assigned and delivered, or caused to be assigned and delivered, to Fire Insurance Company, 15,100 shares of the capital stock of Federal Reserve, including its own shares and those held by Reserve Company. Claimant subsequently acquired and owns the certificate, on which no part of the principal or interest has been paid.

In 1935, a stockholder and policyholder of Federal Reserve instituted this proceeding in equity in the United States Court for Kansas and prayed for the appointment of a liquidating receiver. The receiver and Occidental Life Insurance Company, hereinafter called Occidental, entered into a contract dated June 13, 1936, which provided among other things that, subject to the terms and conditions therein specified, and not otherwise, Occidental should reinsure and assume the liability of Federal Reserve under its contracts of insurance which were in force and effect on May 22; that coincident with the approval of the contract, title to all of the assets of Federal Reserve should vest in Occidental; that since such assets at their then value were insufficient in amount to cover the reserve liabilities, a lien of fifty per cent of the net equity should be placed against each policy thus reinsured, with provision that the lien should be adjusted

at the times and in the manner therein specified, but in no event should it exceed fifty per cent of such net equity; that all assets conveyed, together with all net gains and profits from the business reinsured and from the assets administered by Occidental, should be covered into a separate fund called Federal Reserve Fund; that such fund should be kept in a separate bank account or accounts and that no investment should be acquired with such fund except with the consent and approval of the court; and that Occidental should furnish the court an annual accounting of such fund as long as the lien should exist against the policies, but in no event after June 30, 1951. At no time subsequent to the execution and delivery of the certificate did the books and records of Federal Reserve, or reports or statements published or filed with the insurance department of any state in which it was licensed to do business, show or include such certificate as a liability. Occidental had knowledge at the time of the execution of the contract of the existence of such certificate and of claimant's asserted ownership of it. The court approved the contract and authorized its consummation. Occidental assumed its liability under the contracts of insurance; the receiver transferred, conveyed and delivered the assets to Occidental; the special fund was created; and the contract has been carried out according to its terms. With the money advanced by Insurance Investment Corporation, in the manner outlined, Federal Reserve purchased from a bank a certificate of deposit which was deposited with the Commissioner of Insurance of Indiana as a part of its reserve supporting its outstanding policies of insurance in that state. A substantial part of the money was subsequently loaned, the notes and mortgages received therefor were deposited with the Commissioner of Insurance of Indiana, and they subsequently became a part of Federal Reserve Fund. On May 22, 1936, the total amount of required reserve on all policies issued or assumed by Federal Reserve exceeded $7,-500,000, and according to an appraisement made after the approval of the contract, the value of all its assets as of that date was $5,115,738.68. The lien imposed against the net equities of the policies assumed by Occidental, as of such date, amounted to $2,718,120.72; after the application of such lien, the surplus funds amounted to $172,511.67; by order of the court such surplus, or such part of it as

might be necessary, was reserved for the payment of receivership expenses; and the expenses of the receivership to December 31, 1938, amounting to $157,896.55, were paid by the receiver with funds furnished to him from the Federal Reserve Fund.

Claimant pleaded upon information and belief that profits arising out of the reinsured business of Federal Reserve in excess of $200,000 had accrued and that profits were constantly and continuously accruing; and it prayed that it be adjudged entitled to a lien upon all such profits superior to that of the policyholders or other parties to the suit. The court disallowed the claim, and the appeal is from that judgment.

The parties discuss at length many questions, but it is unnecessary to consider all of them. It was held on a prior appeal in this case that upon the adjudication of insolvency and the appointment of a receiver, the outstanding policies of Federal Reserve were terminated as enforceable obligations for their respective face amounts; that the holders became creditors with the right to participate pro rata in the assets in receivership, but had no other right; and that the effect of the reinsurance agreement was that with the assets in the hands of the receiver, the policyholders acquired new insurance protection which came from Occidental. Hobbs v. Occidental Life Ins. Co., 10 Cir., 87 F.2d 380. In other words, Occidental acquired from the receiver only the assets in his hands, not the policies as binding obligations of insurance for their respective face amounts.

■ Claimant does not assert a lien upon all of the assets which the receiver transferred and conveyed to Occidental. It merely contends that it is entitled to a lien upon the gains and profits of the reinsured business which have accrued under the management of Occidental. It is a rule of universal acceptation that where a contract is ambiguous or doubtful the intention of the parties is of primary importance in determining their rights. And in the ascertainment of such intention the language of the contract, the background against which it was entered into, and the interpretation which the parties placed upon it should be taken into account and given great weight. Federal Reserve was in serious financial difficulty. An examination of its affairs resulted in an official

report which asserted impairment of its capital and reserve. The situation was critical. Correction was imperative. The condition could not be corrected by borrowing money if it immediately became a liability. To make the essential repair in the capital and reserve structure it was necessary to have new money in the business without a corresponding liability. There was cause for concern on the part of the stockholders. There was motive for them to lend aid. Insurance Investment Corporation, a stockholder, made arrangement to secure $300,000 in money which was to be used and was immediately used to increase the reserve for outstanding policies. But no reference to the certificate as a liability was made on the books and records or in any subsequent report or publication of Federal Reserve, and it is not suggested that the owner of the certificate objected to such omission at any time during the seven years intermediate the date of the certificate and receivership. The facts and circumstances leading up to and attending the transaction, and the omission of reference to the certificate in the books, records, reports and publications, show clearly and convincingly that it was the intention of the parties that the money should go into the capital and surplus structure of the company, should become subject to the risks and hazards of the business, and should be repaid only in the event there were net gains and profits. The effect of the transaction was to create a relationship between the owner of the certificate and the holders of policies and other creditors substantially analogous to that ordinarily existing between a preferred stockholder and creditors. Hamlin v. Toledo, St. L. & K. C. R. Co., 6 Cir., 78 F. 664, 36 L.R.A. 826; In re Lathrap, 9 Cir., 61 F.2d 37.

■ But claimant relies strongly upon the language contained in the certificate. It insists that the instrument textually gives it a lien upon the gains and profits which have accrued to the business since Occidental assumed its management. The certificate was addressed to the rights of the parties in three separate and distinct factual situations. The first contemplated a continuation of business on the part of the obligor, and provided that all surplus gains in excess of $50,000 should be paid semi-annually to the holder until the obligation was liquidated in its entirety. That provision indicates a clear purpose to pro-

330

vide that the certificate should constitute a special obligation payable only in the event the company should continue the business and net surplus should accrue. The second contemplated financial difficulty on the part of the obligor, but it's continuation of the business. It provided that the liability was contingent, not an absolute promise to pay, and was limited to the application of the surplus gains from the special fund referred to, and that the general. assets should not be liable. The third contemplated a discontinuance of the business of the obligor, and is the provision to which claimant points with emphasis. It contemplated a reinsurance of the business, and provided that the reinsuring company should be bound to pay to the holder of the certificate, or any certificate or certificates issued in lieu thereof, the savings and profits arising from the reinsured business, less such part thereof as might be payable under prior contracts to other persons or corporations. It is stipulated that the "prior contracts to other persons or corporations" referred to a participating certificate which Federal Reserve issued to Farmers National Insurance Company of America, of Huntington, Indiana, in 1928, on which the unpaid balance as of May 22, 1936, was in excess of $200,000. But the entire instrument, the purpose for which it was executed, the circumstances attending, surrounding and following its execution, all considered in composite and each given due weight, are strongly indicative of an intent and purpose that this provision should have reference to a voluntary reinsurance of the business. This particular provision, as well as the entire instrument, was silent in respect of the reinsurance of the business in connection with a transfer and conveyance of the assets of Federal Reserve by judicial proceedings. Here the assets passed to Occidental by operation of law, not by mutual consent of the two insurance companies. Gazlay v. Williams, 210 U.S. 41, 28 S.Ct. 687, 52 L.Ed. 950. We think it is clear that the provision has no application whatever to a so-called reinsurance made in such circumstances.

■ The sale and transfer of the assets under order of the court in the receivership proceeding was equivalent in law to a foreclosure of the paramount lien or interest of the policyholders. Since the only right which claimant had was analogous or akin to that of a preferred stockholder, such foreclosure extinguished any claim on its part to the gains and profits thereafter accruing to the business under the ownership and operation of Occidental.

The judgment is affirmed.