### APPEAL OF LEASEHOLD REALTY CO.

Docket No. 1727. Submitted August 20, 1925. Decided March 31, 1926.

Certain instruments denominated preferred stock issued by the taxpayer corporation, under their terms and conditions, *held* to be preferred stock and not evidence of indebtedness.

*George F. Killinger, Esq.,* for the taxpayer.
*B. H. Saunders, Esq.,* for the Commissioner.

Before MARQUETTE, MORRIS, GREEN, and LOVE.

This is an appeal from the determination of a deficiency in income taxes for the years 1919 to 1921, inclusive, in the aggregate amount of $965.98.

The deficiency arose from the action of the Commissioner in treating certain alleged interest payments as dividends on preferred stock.

The taxpayer is an Indiana corporation with its principal office in Indianapolis. Its authorized capital stock consisted of:

| | |
|---|---:|
| Common stock | $100, 000 |
| First preferred stock | 115, 000 |
| Second preferred stock | 25, 000 |

It issued said preferred stock and paid dividends on same as follows:

| | |
|---|---:|
| In 1919 | $6, 489. 50 |
| In 1920 | 6, 586. 50 |
| In 1921 | 6, 323. 00 |

The following is a copy of an unissued certificate of said first preferred stock and contains all the essential elements of the issued certificates, except in regard to the filling in of the blanks appropriate to each individual case:

INCORPORATED UNDER THE LAWS OF THE STATE OF INDIANA

Number 238          Common stock $100,000.00          Shares ——

THE LEASEHOLD REALTY COMPANY
Indianapolis, Indiana.

First Preferred Stock                    Second Preferred Stock
  $115,000.00                               $25,000.00
Series July 1, 19—

This Certifies that ———— is the holder of ———— fully paid up and non-assessable shares of the par value of One Hundred Dollars each of the first Preferred Stock of the The Leasehold Realty Company, transferable only on the books of the Company in person or by proxy on the surrender of this certificate.

The holder hereof shall be entitled to a quarterly dividend of one and three-eighths per cent, upon the face value hereof, payable on the first days of January, April, July and October (the first payable July 1, 1916), payable before any dividend is paid or set aside for the benefit of the Common or second Preferred Stock, and such dividends shall be cumulative. In event of liquidation, the holder hereof shall be entitled to receive the par value hereof, plus all accumulated dividends, before anything whatever is paid on account of the second Preferred or Common Stock, and shall not participate further in the liquidation.

The Realty Company will retire this stock at par, plus accrued dividends, on the first day of July, 19—, and it may, at its option, retire the same at any dividend date after July 1, 1920, and before the date fixed for the absolute retirement, at 102 per cent of par, plus all accrued dividends: Provided, stock to be retired prior to maturity shall be selected by lot from that last maturing, and sixty (60) days' prior written notice shall be given to the registered holder of the shares selected for redemption.

The Realty Company agrees that it will not convey or incumber its leasehold estate at the northwest corner of Market and Delaware Streets, in the City of Indianapolis without the consent of all its Preferred stockholders. If

it should violate any of the provisions hereof, or if it incur indebtedness after the erection of its new building on said real estate in excess of $1,500, or if it fail to pay its dividends hereon, or to redeem this stock at the time fixed herein, then at the option of the holder hereof this stock shall immediately mature and the holder hereof shall be entitled to require the liquidation of said Company and the application of its assets to the payment of its creditors and stockholders in the order provided by the law and by this certificate.

This certificate shall not be valid until registered by The Union Trust Company of Indianapolis, as registrar.

The quarterly payments made by the taxpayer were entered upon its books under a " Dividend Account," and the various amounts, including the amounts in controversy, were debited to " Quarterly Dividends."

No formal declaration of dividends was entered upon the records of the board of directors as each installment became due, but the respective amounts were entered and credited upon its books to the stockholders as routine business. There was always sufficient surplus from which to pay the same and the taxpayer did not default in any of the conditions provided in the preferred stock certificates.

The taxpayer deducted from income the payments of dividends on the preferred stock, on the theory that said payments were interest on indebtedness, but the Commissioner disallowed such deductions and increased income accordingly, resulting in the deficiency in controversy.

OPINION.

Love: The sole question at issue is whether the document quoted in the findings of fact is a stock certificate or an evidence of indebtedness, resulting in the question whether or not the so-called dividends were, in fact, dividends on stock or interest on an indebtedness.

It will be noted that the certificate in question (1) represents a part of the authorized capital stock of the corporation; (2) it is issued in the ordinary form of a preferred stock certificate; (3) it provides for quarterly dividends, such dividends to be cumulative; (4) it is not secured by mortgage or otherwise and does not purport to carry precedence over creditors; and (5) the date designated for retirement was fixed in each certificate, and, in event of its being called at any time prior to such date, in addition to payment of all accrued dividends, a premium of 2 per cent was provided for.

While it is the generally accepted rule that the name given to the instrument is not conclusive of its character and that inquiry will be made as to its real character, there is in this particular case no material evidence that this instrument is not what it purports to be on its face. The taxpayer points out that the instrument provided for a definite maturity date, a stipulated dividend, that the company will not convey or incumber a certain leasehold without the consent of the stockholders, or incur indebtedness in excess of

$1,500 after a certain building is constructed, and that, in default in carrying out any of the provisions, the holders will be entitled to require liquidation. None of these characteristics are uncommon to preferred stock or affect the conclusions reached in the authorities hereinafter quoted.

In Indiana it is well settled that preferred stock is not in effect a loan and that the owner thereof is not a corporation creditor.

It is, however, contended by appellees that the purchase of preferred stock in an Indiana corporation is in effect a loan; but this position is untenable. The holder of preferred stock is a shareholder in the corporation. He is not a corporation creditor, and has no rights as such. His rights are those of the common shareholder, except as those rights are limited by the statute and the contract, and the additional right to have his dividends paid out of the earnings and his stock redeemed out of the assets in preference to the common shareholder. 1 Cook on Corporations, §§ 267–271; Burns' Ann. St. 1901, §§ 5066, 5067, 5068. The purchase of stock of a corporation is not a loan to the corporation of the amount of said stock. None of the elements of debtor and creditor exist. The purchase of stock is the purchase of so much of an interest in the assets and affairs of such corporation. *Grover* v. *Cavanaugh,* 40 Ind. App. 340; 82 N. E. 104.

Ordinarily, a preferred stockholder, even though the preferred dividend is in terms guaranteed, is not to be regarded as a creditor of the corporation, so as to be entitled to compete with other creditors in the distribution of the assets of the corporation, or for any other purpose; he is a stockholder like the holders of common stock, the only difference being that he is entitled to a certain preference over them.

This view is sustained by many leading authorities. *Warren* v. *King*, 108 U. S. 389; *Armstrong* v. *Union Trust & Savings Bank,* 248 Fed. 268; *Spencer* v. *Smith*, 201 Fed. 647; *Grover* v. *Cavanaugh,* 40 Ind. App. 340; 82 N. E. 104. In the case of *Armstrong* v. *Union Trust & Savings Bank, supra,* there was a ten-year retirement provision and the dividend provision was denominated as "interest," but the court held that a holder of such preferred stock was not a creditor but had only the rights of a stockholder.

In the instant appeal it is not necessary to rely upon the authorities quoted, as the language of the instrument is certain and unambiguous. The first paragraph provides:

This Certifies that ———— is the holder of ———— fully paid up and non-assessable shares of the par value of One Hundred Dollars each of the first Preferred Stock of The Leasehold Realty Company, transferable only on the books of the Company in person or by proxy on the surrender of this certificate.

Throughout the instrument there are frequent references to " dividends," " preferred stock," and " stockholder." There is nothing in the instrument to give the strained construction that the taxpayer

would put upon it. If it really were intended that the transaction was to secure money as a loan, it would have been just as convenient and easy to issue bonds or notes to carry out such intention.

The taxpayer further argues that, since its minute book did not disclose a record of a formal declaration of dividends at each installment period, the dividends were unauthorized and that the payments made were, therefore, expense items. It is clear, however, that the amounts were entered upon its books under a "Dividend Account," were entered expressly as "Dividends," and were undoubtedly acquiesced in by the directors and stockholders. As these payments were fixed by the express contract in the certificates and as there was in fact sufficiently earned income for a surplus, the taxpayer may not have considered it necessary to make a formal declaration of dividends at each period, but the mere failure to enter the authorization in its records or expressly to authorize the dividends each time would not, in itself, void the dividends to the extent that the corporation itself can take advantage of its own errors.

Testing the instrument here involved in the light of many decisions of our higher courts and by the provisions of the instrument itself, we conclude and hold that the certificates in question are stock certificates and not evidence of indebtedness, and that the periodical payments thereon were dividends and not interest. *Appeal of I. Unterberg & Co., Inc.*, 2 B. T. A. 274; *Appeal of Kentucky River Coal Corporation*, 3 B. T. A. 644.

*The deficiency for the year 1919 is $133.28; for 1920, $384.24; and for 1921, $448.46. Order will be entered accordingly.*