TICKER PUBLISHING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. G. WYCKOFF, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101252, 101280, 101606.   Promulgated February 24, 1942.

*Benjamin Grund, C. P. A.,* for the petitioner.
*Allen T. Akin,* Esq., for the respondent.

OPINION.

DISNEY: The primary question is whether the so-called income bonds are evidence of indebtedness entitling Ticker to deductions for interest accrued thereon during the taxable year or, in substance, certificates of stock, with no right to deductions for amounts paid or accrued thereunder.

The respondent's contention here is that the so-called income bonds issued by Ticker were not more than preferred stock issued as a stock dividend without consideration. The petitioners contend that Ticker was indebted to the bondholders under the agreement of May 20, 1926, and that the securities were issued under a debtor and creditor relationship.

As proof of the consideration running from Ticker to the Wyckoffs for the issuance of the income bonds, petitioners rely upon paragraphs 2 and 17 of the agreement of May 20, 1926. The second paragraph of the agreement is in substance that $500,000 class A and class B bonds would be issued to Richard D. Wyckoff and his wife, respectively; that upon receipt of the class A bonds or preferred stock Richard D. Wyckoff would assign to his wife his interest in common stock in, and claims against, Ticker, and that the bonds or preferred stock would be received by him in full payment of his interest in the common stock and in the claims. The seventeenth paragraph contained an acknowledgment of Cecelia G. Wyckoff that she had no claim against her husband for an interest in stock owned by her husband except the ten shares of Ticker which he had agreed to transfer to her, and that she had and made no claims against "any of the Corporations issuing such stocks, except the TICKER PUBLISHING COMPANY." It also provided for a general release by Richard D. Wyckoff in favor of his wife and Ticker and a general release from Ticker in favor of Richard D. Wyckoff, excepting in each case obligations to be performed under the contract and an obligation of Richard D. Wyckoff to pay accounts known as the "Richard D. Wyckoff Analytical Staff Inc. Accounts."

The preamble of the agreement recites that "the parties hereto are each possessed of certain property, and differences have arisen between them and claims made in respect to their ownership of and their interest in said properties, * * *." No specific claims of either Richard D. Wyckoff or his wife against Ticker are set forth in the agreement and at the hearing there was no proof of the existence of such claims. Cecelia G. Wyckoff testified upon cross-examination, in response to a question as to the indebtedness of Ticker to her and her husband in 1926, that "Mr. Wyckoff claimed that in view of the fact we had spent about $2,000,000 in building up this company, that he either wanted it outright or wanted the Ticker Publishing Co. to give him money. Finally he agreed to take half a million dollars." She further testified that this was the debt her husband "claimed Ticker owed him." Other provisions of the agreement disclose that the Wyckoffs were having domestic difficulties and that the agreement was in the nature of a property settlement in anticipation of a divorce. Upon brief petitioners admit that the matrimonial disputes led to the claims of Richard D. Wyckoff against Ticker and differences as to ownership of its stock. That the agreement was one to settle disputes between Richard D. Wyckoff and his wife is clearly shown by paragraph twenty-first of the agreement, reading as follows:

In consideration of the settling of the disputes between Mr. and Mrs. Wyckoff and the benefits to be derived by the Corporation by reason thereof, the Corporation joins in this agreement to the extent that the provisions thereof are or may be applicable to it.

This language, in our opinion, clearly shows that the only connection the corporation had with the Wyckoffs was as stockholders, and not as creditors. No proof was made of the expenditure of any sum by the Wyckoffs or either of them "in building up the company" for which Ticker was liable. The plan had as its purpose the settlement of differences between the Wyckoffs and they, as sole stockholders of Ticker, used it to compromise their personal disputes. We conclude from all of the evidence that the Ticker Publishing Co. was not indebted to either of the Wyckoffs at the time the preferred stock and income bonds were issued.

If there were proof that Ticker was indebted to the Wyckoffs at the time of issuance of the income bonds and that the securities were issued in satisfaction of the debts, such facts would not control the issue, for obviously there would still be the question of whether the securities issued were in fact bonds, evidence of indebtedness, payable with interest, or preferred stock, on which only dividends were payable.

The reports contain numerous cases involving questions like the one before us. They do not lay down a definite rule to follow in

determining the answer. Each case turns largely upon its own peculiar facts. *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, affirming 30 B. T. A. 337; *Commissioner* v. *Schmoll Fils Associated, Inc.*, 110 Fed. (2d) 611, reversing 39 B. T. A. 411; *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792. The fact that the securities were called income bonds by Ticker and that the payments to be made semiannually thereunder were classified as interest is not decisive. *United States* v. *South Georgia Railway Co.*, 107 Fed. (2d) 3.

In *United States* v. *South Georgia Railway Co.*, *supra*, the court held that the most significant, if not the essential, feature of a debtor and creditor relationship is the existence of a fixed maturity date with a right to enforce payment in the event of default. In *Commissioner* v. *O. P. P. Holding Corporation*, *supra*, the court said:

* * * The fact that ultimately he [holder of debenture bonds] must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The final criterion between creditor and shareholder we believe to be the contingency of payment. * * *

To the same effect are *Jewel Tea Co.* v. *United States*, 90 Fed. (2d) 451, and *Haffenreffer Brewing Co.* v. *Commissioner*, 116 Fed. (2d) 465. In *Commissioner* v. *Schmoll Fils Associated, Inc.*, *supra*, the court held that the absence of a maturity date, the obligation to pay income from net earnings, and the giving to bank creditors rights over holders of the debentures made the payments more like dividends than interest, and the securities like preferred stock rather than bonds. In *Warren* v. *King*, 108 U. S. 389, the Court emphasized the fact that certificate holders had to look to net earnings for income, as grounds for holding that no debtor and creditor relationship existed.

Though the income bonds were a liability of the corporation, there may be liability without debt. *Journal Co.*, 44 B. T. A. 460. Here the parties were very careful to provide that the so-called interest on the bonds was payable only out of net profits computed after creating a reserve for unexpired subscriptions. Thus they were like preferred stock, which does not give the holder any right to income except out of earnings or to his capital on a specified maturity date. Petitioners contend that the liability of Ticker to pay principal and interest to the extent of earnings gave the bonds a maturity date, and fixed the liability to pay. This was not a definite maturity date or a liability to pay regardless of net profits. The distinction is one which the courts in the cited cases point to as strong indication of intent to issue preferred stock rather than evidence of indebtedness. The bondholders did not, except upon liquidation of Ticker, have a right to have their claims for interest paid out of anything other than net profits. Creditors have a right to enforce their claims

against the assets of the debtor. That right did not exist here as to income on or the principal of the securities, prior to liquidation.

The fact that the bonds did not carry voting rights does not overcome other more material factors. Preferred stock is frequently issued without such rights. It is worthy of note that in addition to the requirement that "interest" be paid only from net profits, payment could be made under the terms of the "income bonds" only if the directors declared it to be then payable. Such a provision is not in harmony with the idea of a debt payable at all events, except as to net profits, but on the contrary is similar to the usual necessity of declaration of a dividend on preferred stock.

Petitioners argue that an opinion of the New York Supreme Court, affirmed by the Appellate Division, in an action instituted by executors of the estate of Richard D. Wyckoff against Ticker and a recognition in stipulations involving income tax liability for prior years, during which amounts were paid under the bonds as interest, is *res adjudicata* on the question.

The opinion relied upon was rendered in connection with a motion filed by the plaintiff in an action to inspect the books of Ticker. Neither the record here nor the opinion discloses the issue involved in the proceeding. Mere reference by the court to the owners of the securities as bondholders has no binding force. They were so designated in the certificates, but, as we have seen, a certificate may be something other than the name assigned to it by the issuing corporation.

Petitioners' reply to respondent's amended answers alleges that in settling the proceedings before this Board for prior years amounts paid out under the bonds were allowed as interest. There is no proof of that fact. The stipulation here is that the amounts were held to be dividends by the respondent in determining the deficiencies. There is no proof of recognition by the Commissioner in those cases that the amounts represented interest, not dividends. In short, we do not know how the parties arrived at the stipulated deficiencies; moreover, there were no decisions on the merits. Clearly, upon the facts before us, *res adjudicata* may not be applied here. *Almours Securities, Inc.*, 35 B. T. A. 61; affd., 91 Fed. (2d) 427; certiorari denied, 302 U. S. 765.

We conclude and hold that the so-called income bonds were, in substance, preferred stock and the amounts in controversy constitute dividends on preferred stock, not interest, as originally determined by respondent.

Ticker contends, in the alternative, that in case it is held that the "income bonds" interest constitutes dividends on stock, then it is entitled to a credit of $9,362.36 in 1936 and a credit of $48,587.04 in

1937 on account of alleged prohibitions in the agreement of May 20, 1926, and the income bonds, on the payment of dividends. The provisions of section 26 (c) (1) and (2) of the Revenue Act of 1936,[1] and *Joell Co.*, 41 B. T. A. 825, and *G. B. R. Oil Corporation*, 40 B. T. A. 738, are relied upon.

In the *Joell Co.* case the taxpayer was required by a written contract to apply the income realized from real estate to discharge the mortgage indebtedness on the property at the time of its acquisition by the taxpayer. We regarded the mortgage as a debt, although it was not assumed in the purchase of the property. In the *G. B. R. Oil Corporation* case the taxpayer was required to turn over to a bank all of the proceeds of oil leases for credit on indebtedness to the bank for loans to develop the leases. In each case we held that section 26 (c) (2), *supra*, entitled the taxpayer to the credit provided for therein.

The cases relied upon by Ticker are not controlling. In those cases earnings and profits of the taxable year were required by written contracts to be paid in discharge of a *debt*.

The statutory provisions granting the credit must be strictly complied with. *Nevada-Massachusetts Co.*, 43 B. T. A. 1127; *Union Telephone Co.*, 44 B. T. A. 607. Section 26 (c) (1) relates to contracts under the provisions of which no dividends can be distributed without violating its terms and section 26 (c) (2) deals with agreements requiring the payment or setting aside of earnings for the discharge of *debts*. Since we have above held that no corporate debt was involved in the "income bonds", it follows that section 26 (c) (2) does not here apply and we held, therefore, that the petitioner is not entitled to the dividend credit claimed under that subsection. Of course, petitioner is entitled to credit, under section 27 (a), for the amounts *paid* which,

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

under the respondent's concession, cover all of the adjusted net income for 1936, and $25,624.83 for 1937. The question arises then whether the balance of adjusted net income for 1937, $40,722.52, is basis for a claim of credit under section 26 (c) (1). Section 26 (c) (1) does not apply, for though existence of debt is not a prerequisite to its application, there must be a contract restricting payment of dividends, and here there was no such restriction. The contract indeed provided for, and not against, the payment of dividends, and the petitioners could have paid them without violation of any provision of the contract, but in compliance therewith. The adjusted net income could all have been devoted to payment of dividends. In fact, the entire amount was within the taxable year declared payable, and payment followed in March 1938.

Ticker also contends that it is entitled to dividends paid credits in computing surtax on any resulting undistributed net income for 1936 and 1937, and that it is also entitled to a dividend carry-over credit of $5,000 in computing surtax on undistributed profits for 1937.

The respondent concedes that Ticker is entitled to a dividends paid credit of $44,939.10 for 1936 and a dividend carry-over credit to 1937 as a result thereof. The parties agree that the amount should be determined under Rule 50. As to the year 1937, the respondent contends that as no part of the amount of $40,722.52 credited to Cecelia G. Wyckoff as interest on the class A bonds was paid in 1937, Ticker is not entitled to any credit in respect thereto. Concerning the class B bonds he concedes that the credits totaling $25,624.83 to C. G. Wyckoff, Inc., constituted the payment of a dividend, but that the amount of the dividends paid credit is limited to 15 percent thereof, or $3,843.72, by the provisions of sections 26 (b) and 27 (h) of the Revenue Act of 1936.[2]

We agree with respondent on the dividends paid on the class A bonds. They were declared on December 30, 1937, credited the next day, but were not payable or paid until March 7, 1938. The crediting under the circumstances did not constitute payment under section 27 (a) of the Revenue Act of 1936.[3] There must be payment to obtain the

---

[2] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(b) DIVIDENDS RECEIVED.—85 per centum of the amount received as dividends from a domestic corporation which is subject to taxation under this title. \* \* \*

SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \* \* \*

(h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

[3] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

benefits of the statute. *Schinebro, Inc.*, 45 B. T. A. 580. *Atlantic Land Co.*, 43 B. T. A. 74, and *Valley Lumber Co. of Lodi*, 43 B. T. A. 423, are clearly distinguishable. The stipulation relied upon by Ticker to show that the amount was reported by Cecelia G. Wyckoff as income in 1937 relates to "interest" paid by Ticker, not "interest" declared by it.

The respondent cites no authority other than sections 26 (b) and 27 (h), *supra*, to support his contention that the dividends paid credit on the distribution made to C. G. Wyckoff, Inc., is limited to 15 percent of the amount thereof. We find no decided cases on the question.

The gist of the contention of respondent seems to be that as 85 percent of the dividend paid on the class B bonds escaped tax by reason of the credit allowed to corporations under section 26 (b) for dividends received from domestic corporations, to that extent the payment was a nontaxable distribution of Ticker.

Dividends are expressly includible in gross income by the provisions of section 22 (a) of the Revenue Act of 1936. Definitions of gross income in prior statutes contained a similar provision. Sec. 22 (a), Revenue Acts of 1928, 1932, 1934; sec. 213 (a), Revenue Acts of 1918, 1921, 1924, 1926. These revenue acts granted, in general, deductions to corporations for amounts received as dividends from domestic corporations. Sec. 234 (a) (6), Revenue Acts of 1918, 1921, 1924, 1926; sec. 23 (p), Revenue Acts of 1928, 1932, 1934. By amendment to the 1934 Act, the Revenue Act of 1935 restricted the deduction to 90 percent of the amount received. Sec. 102 (h).

The Revenue Act of 1936 did not permit a deduction from gross income for dividends received by corporations from domestic corporations, but allowed as a deduction from *net income*, for normal tax purposes, the credit allowed by section 26 (b), which is 85 percent of the amount of dividends received from a domestic corporation. Sec. 13 (a) (2). This change in the 1936 Act did not alter the necessity of including in gross income, as before, dividends from domestic corporations. It merely provided for a deduction from net income for normal tax purposes instead of, as theretofore, a deduction from gross income. Thus there was clear provision recognizing the distribution as a taxable dividend and we do not think it was otherwise because Congress, by another provision, allowed a portion thereof to escape normal tax by a credit against net income.

Aside from the taxability of the dividend for normal tax purposes, the whole of the amount is subject to surtax on undistributed profits and personal holding company surtax. Secs. 14 and 351.

We hold that Ticker is entitled to a dividends paid credit for the entire amount of the dividends paid to C. G. Wyckoff, Inc.

The next contention of Ticker is that, since the respondent's claim

for an increased deficiency for 1936 was not filed in the proceeding within the three-year period allowed by section 275 (a) of the Revenue Act of 1936 [4] for assessment, the request was not timely.

On November 8, 1939, well within the three-year period allowed for assessment, respondent mailed a notice of deficiency and within the 90 days allowed by section 272 (a) Ticker petitioned this Board for a redetermination of the deficiency. The provisions of section 277 suspended the running of the statute of limitations until the decision of the Board becomes final and for 60 days thereafter. Before the hearing herein, while the statutory period of limitations was under suspension, the respondent, by an amended answer, on February 12, 1941, asserted a claim for an increased deficiency as permitted by section 272 (e), claiming that amounts allowed by him as interest were dividends on preferred stock. Petitioner filed an amended petition at the hearing, and the respondent filed answer thereto and again asked for increased deficiency.

The petitioner cites *Commissioner* v. *Rieck*, 104 Fed. (2d) 294; certiorari denied, 308 U. S. 602; reversing 35 B. T. A. 1178. In that case the court declined to permit an amendment to the petition of a taxpayer claiming refund of an overpayment because it constituted a new cause of action and was filed after the expiration of the period of time allowed by statute for the filing of claims for refund. In that case the taxpayer did not have the benefit of a statute authorizing him to make claim for a refund at any time before or at the hearing before this Board. Respondent had such right here. This statutory right serves to distinguish the two proceedings. The claim was filed within the time allowed by the statute and respondent is entitled to any increased deficiency redetermined under Rule 50. *Helena Liebes, Executrix*, 20 B. T. A. 731; affd., 63 Fed. (2d) 870; *Rowan Drilling Co.*, 44 B. T. A. 189.

Ticker contends that in the event we hold that the payments made by it under the income bonds constitute dividends for 1936, and not interest, then it is entitled to an additional deduction of $2,000 in 1937 for New York State franchise tax.

At the hearing counsel for respondent made no reply to the statement of counsel for Ticker that the amount of New York State franchise tax would be determined under Rule 50. Upon brief he does not contest the allowance of any additional amount properly accruable, but argues that, as the burden of proof was upon petitioner and the record does not show the amount of taxes claimed as a deduction and

[4] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
  Except as provided in section 276 —.
  (a) GENERAL RULE.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

if there is additional liability for the taxes it can not be ascertained until the decision herein is rendered, we should not allow any amount.

Ticker claimed in its return for 1937 the sum of $742.79 as a deduction for New York State franchise tax, all of which the respondent allowed except $25 paid for another corporation. The earnings of Ticker as recorded in its books were stipulated and no claim is being made by the respondent that the books do not reflect its true profits, except for adjustments made necessary by our holdings herein. The rate of tax on these earnings is a matter of state statute, of which this Board takes judicial notice. In an early decision we held that New York State franchise tax accrues on November 1 each year. *Jamestown Worsted Mills*, 1 B. T. A. 659. The New York State franchise tax accruable as a deduction for 1937 depends upon income for 1936. After the amount of income for 1936 is determined in accordance with this opinion, the parties should have no difficulty in arriving at the amount of New York State franchise tax properly deductible for 1937. However, if they are unable to agree upon this item in their computations under Rule 50, a further motion in respect thereto can be made.

*Decision will be entered under Rule 50.*