Annis Furs, Inc., a Delaware Corporation v. Commissioner.
Annis Furs, Inc. v. Commissioner
Docket No. 110894.
United States Tax Court
1943 Tax Ct. Memo LEXIS 487; 1 T.C.M. (CCH) 504; T.C.M. (RIA) 43050; January 28, 1943
*487 Petitioner in the year 1939 exchanged its 6 percent debentures due in twenty years from date for its outstanding 6 1/2 percent cumulative preferred stock, which it immediately cancelled and retired. Payment of the debentures was made subordinate to the claims of other creditors but interest thereon was payable semi-annually and was not in any way contingent upon earnings or profits of the corporation. Held, that the debentures evidenced an indebtedness of petitioner to the holders thereof and petitioner, keeping its books on an accrual system, is entitled to a deduction for the interest which accrued on such debentures during the taxable year in question. Everett H. Wells, Esq., 1957 Union Guardian Bldg., Detroit, Mich., for the petitioner. Philip M. Clark, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the fiscal year ended March 31, 1940, of $7,754.07. The deficiency is due to five adjustments to petitioner's net income as disclosed by the tax return filed by petitioner for the taxable year in question. These adjustments were as follows: Unallowable Deductions and Additional *488 Income: (a) Bond interest
$36,000.00
(b) Bond expense
500.00
(c) Excessive depreciation
2,668.32
(d) Reserve for discount
4,500.00
(e) Capital stock tax
60.00
Total
$43,728.32
The petitioner assigns error only as to adjustment (a). That particular adjustment is described in the deficiency notice as follows: (a) It is held that the payment or accrual of $36,000.00 for the taxable year ended March 31, 1940 as interest on securities issued by your corporation in exchange for its preferred stock is not allowable as a deduction under Section 23 (b) of the Internal Revenue Code. Petitioner by an appropriate assignment of error contests this action of the Commissioner. Findings of Fact Petitioner is a corporation with its principal office at Detroit, Michigan. Petitioner's income tax return for the period here involved was filed with collector at Detroit, Michigan. Petitioner was incorporated July 1, 1937, under the laws of the State of Delaware with an authorized capital of $1,000,000 divided into 28,000 shares; 8,000 shares of which were preferred with a par value of $100 per share and 20,000 shares of which were common with a par value of $10 per share. The preferred *489 stock provided for preferential cumulative dividends as and when declared by the Board of Directors, out of the annual net profits of the corporation, or out of its net assets in excess of its capital, as determined pursuant and subject to the General Corporation laws of the State of Delaware, at the rate of six and one-half per centum per annum per share, cumulative from the date of issuance, and payable annually, at such time during each year, as the Board of Directors shall from time to time determine, before any dividends shall be declared or paid upon or set apart for the Common stock. Any further dividends were to be paid exclusively upon the common stock. The preferred stock was redeemable in whole or in part at any time at the option of the board of directors, by lot, or pro rata at $105 per share upon 30 days' notice. In the event of liquidation or dissolution whether voluntary or involuntary, the holders of preferred stock were entitled to receive out of the assets of the corporation either from capital, surplus or both $105 per share together with accrued dividends before any distribution to common stockholders. The entire voting power was vested equally in the holders *490 of both classes of stock, share and share alike, the holder of each share of either class having one vote for each and every share. At the first meeting of the directors of the corporation, held on July 2, 1937 a resolution was adopted authorizing the officers to issue all of the authorized capital stock in exchange for all of the issued and outstanding capital stock of Newton Annis Furs, a Michigan corporation. Newton Annis Furs was a corporation organized under the laws of the State of Michigan in 1928 to continue the fur business then operated and owned by Newton Annis as sole trader, which he had carried on for a number of years in the City of Detroit. This corporation had an authorized capital of $500,000 consisting of 50,000 shares of common stock with a par value of $10 per share, of which 40,000 shares was then issued and outstanding. This stock was held as follows: Newton Annis
100 shares
The Imperial Trust Com-
pany, Trustee
37,400 shares
Hannah F. Walker
2,500 shares
The exchange was on the basis of one share of preferred stock of Annis Furs, Inc. for each five shares of Newton Annis Furs and also one share of common stocks of Annis Furs, Inc. for each two *491 shares of Newton Annis Furs. Certificates for 40,000 shares of Newton Annis Furs were delivered to Annis Furs, Inc. and the stock of the latter corporation was issued on July 2, 1937, as follows: Imperial Trust Company
7,500 Preferred
18,750 Common
Hannah F. Walker
500 Preferred
1,250 Common
On the same day a certificate for 40,000 shares of Newton Annis Furs was issued to Annis Furs, Inc. At the same meeting - July 2, 1937, the directors of Annis Furs, Inc. ordered the dissolution of Newton Annis Furs as a wholly owned subsidiary. All of the foregoing was done in accordance with a plan for reorganization which was prompted by the purchase from Newton Annis on April 13, 1937, of the business by the Imperial Trust Company as trustee. This was treated by both the taxpayer and the Government as a nontaxable reorganization under the provision of section 112. The petitioner conducts a large retail store in the City of Detroit for the sale of fur garments and also has an office in New York, several leased departments in other cities and a wholesale business throughout most of the United States. Following the reorganization named above there was no change in the stock *492 ownership until December 20, 1937, at which time the stock held by the Imperial Trust Company was transferred as follows: Douglas Investments, Ltd
2679 Common
1071 Preferred
Wesley Investments, Ltd
2679 Common
1071 Preferred
Bickerdike Investments, Ltd
2679 Common
1071 Preferred
Vulcan Investments, Ltd
2679 Common
1071 Preferred
Campbell Investments, Ltd
2678 Common
1072 Preferred
Isabel Investments, Ltd
2678 Common
1072 Preferred
Taylor Investments, Ltd
2678 Common
1072 Preferred
A dividend of 3 1/4 percent was paid to preferred stockholders on December 31, 1937. On January 27, 1938, a dividend of $2,50 per share was paid on the common stock. No further dividends were paid on the preferred stock. At a meeting of the directors held on June 16, 1939, the officers were authorized subject to the approval of the stockholders "to make and create an issue of 6% bonds of which the aggregate principal amount shall be limited to $800,000.00 $ which bonds shall be known as 6% Twenty Year Debentures and which shall be dated as of the First day of July, 1939, and shall bear interest at the rate of 6% per annum, payable semi-annually on the First days of January *493 and July in each year, and which shall be issued in coupon form with each interest coupon attached and in such denomination as said officers shall deem advisable, and which said bonds shall mature for payment in the principal amount on the 1st day of July, 1959." The officers were by the same resolution authorized to offer such debentures to the then holders "of the outstanding preferred stock of the corporation in exchange for such preferred stock at the price of $100.00 per share." A meeting of the stockholders was held on June 28, 1939, at which meeting a resolution was adopted ratifying the action of the directors and authorizing the issuance of the debentures and their exchange for the preferred stock. These debentures were issued with 40 semi-annual interest coupons attached, in bearer form, and were exchanged for the outstanding preferred stock on the basis of $100 par value of debentures for each share of preferred and accrued dividends. The preferred stock was surrendered to the company upon delivery of the bonds and was cancelled. On January 1, 1940, the first interest coupons attached to these bonds matured and were presented for payment. The corporation paid a total *494 of $24,000 at that time and charged such payment to the interest account. The corporation, operating on an accrual basis and having a fiscal year ending March 31st, accrued three months additional interest for the remainder of the fiscal year amounting to $12,000. This made a total of $36,000 paid or accrued during the fiscal year ending March 31, 1940. The debentures, which have been described in the foregoing findings, were in form as follows: UNITED STATES OF AMERICA-STATE OF DELAWARE
No. 6 Per Cent Twenty Year Debenture Due July 1, 1959. ANNIS FURS, INC., a corporation duly organized and existing under the laws of the State of Delaware, (hereinafter called the "Corporation") for value received hereby promises to pay to the Bearer hereof, or if registered, to the registered holder hereof, on the 1st day of July, 1959, (unless this debenture shall have been sooner redeemed or retired), ONE THOUSAND DOLLARS in legal currency of the United States of America, and to pay interest thereon from July 1, 1939, at the rate of Six (6) per cent per annum, such &nte-est to be payable in like currency on the 1st day of January and the 1st day of July in each year upon the presentation *495 and surrender of the proper interest coupons as they severally mature, each of which is for six months interest on this debenture. Both the principal and interest of this debenture shall be payable at the office of the corporation in the City of Detroit, Michigan. This debenture is one of a duly authorized issue of $800,000.00 par value of 6% Twenty Year Debentures of the Corporation. All of said debentures are issued under and pursuant to a resolution of the stockholders of the Corporation, dated as of the 28th day of June, 1939, subject to the provisions of such resolution. The right is hereby reserved to the Corporation at any time, upon giving thirty (30) days notice in writing of its intention so to do, to redeem any or all of said 6% Twenty Year Debentures at such time outstanding by the payment of the par value thereof plus accrued interest to the date of such redemption. Provided, however, and it is expressly agreed by the Corporation and the holder thereof, that the Corporation shall not redeem and prepay this debenture or any debenture of this issue unless on the date of redemption the quick assets of the Corporation shall be not less than two and one-half times its total *496 liabilities, including the debentures of this issue to be redeemed and prepaid. Such quick assets and current liabilities are to be determined in accordance with recognized accounting principles and are to be certified to the Corporation by a Certified Public Accountant engaged in public accounting practice. The holder of this debenture hereby agrees with all creditors of said Corporation, its successors or assigns, other than the holders of similar debentures of this issue, that his rights and remedies as such holder shall be subject, junior and subordinate to the rights and remedies of all creditors of said Corporation, from time to time existing, so long as this debenture remains outstanding and unpaid, other than holders of similar debentures of this issue, and that the holder hereof shall not be entitled to participate in the assets of said Corporation or in the proceeds of any sale or disposition thereof until all creditors of said corporation, from time to time existing, so long as this debenture remains outstanding and unpaid other than the holders of similar debentures of this issue shall have been paid in full. The holder hereof further agrees with all such creditors that *497 in case of any receivership, bankruptcy, liquidation, dissolution or winding up of said Corporation, whether voluntary or involuntary, all creditors of said corporation other than the holders of similar debentures of this issue shall be entitled to be paid in full before any payment shall be made on account of principal or interest on this debenture. The holder of this debenture shall have no recourse for its payment to any individual liability imposed by statute or otherwise upon any present or future Stockholders, Directors or Officers of the Corporation, such liability being waived by the holder hereof by the acceptance of this debenture. This debenture is transferable by delivery or if registered, by transfer upon the books of the Company. IN WITNESS WHEREOF, Annis Furs, Inc. has caused this instrument to be signed by its President, or Vice-President, and its corporate seal, attested by its Secretary, or an Assistant Secretary, to be hereunto attached, all as of this 1st day of July, A.D. 1939. ATTEST: ANNIS FURS, INC. By President. Secretary The following is typical of the coupons which were attached to each of the debentures: No. On the 1st *498 day of January, 1940, unless the bond herein mentioned shall have been called for previous redemption, ANNIS FURS, INC. promises to pay to bearer upon surrender of this coupon, at its office in Detroit, Michigan, $30.00 being six months interest then due on its 6% Twenty Year Debenture date July 1, 1939, No. Treasurer. Opinion BLACK, Judge: The only issue presented to us for decision in this proceeding is whether the Commissioner erred in disallowing a claimed deduction of $36,000 as interest accrued by petitioner in its fiscal year ending March 31, 1940. The petitioner kept its books and filed its income tax returns on the accrual basis. As to that fact there is no issue. In his deficiency notice the Commissioner does not make clear his reasons for this disallowance of accrued interest. He simply states that the amount claimed is not allowable as a deduction under section 23(b) of the Internal Revenue Code. The provisions of that section of the Code with respect to the deduction of interest are familiar and need not be quoted in this opinion. Apparently the Commissioner's position is based upon the fact that there was no business purpose which served as a justification *499 for the action by petitioner and its stockholders taken in 1939 whereby the stockholders exchanged their preferred stock calling for 6 1/2 percent cumulative dividends and redeemable at $105 for 6 percent debenture bonds due in 20 years with interest payable semi-annually, and redeemable under certain conditions at $100. Counsel for the Commissioner says in his brief with respect to this point of lack of business justification as follows: There is nothing in the record to show that there existed a corporate business purpose as the reason for the exchange of the bonds for preferred stock. A reason stated by Witness Webster was that petitioner corporation was considered more or less his endeavor, but that the money came from his brothers and sister through their various holding companies, and that there was an idea on their part that they wanted a permanent income if possible. This purpose, however, is personal to the stockholders and not a corporate purpose. See Gregory v. Helvering, (1935) 293 U.S. 465. If in order for petitioner to prevail in this case it was necessary for petitioner to show that there was a financial reason or some other similar *500 reason or purpose which made necessary the recapitalization which took place when petitioner exchanged $800,000 in debentures for 8,000 shares preferred stock par value of $100, we would be inclined to agree with the Commissioner that no such business purpose has been shown. R. Howard Webster, president of petitioner, testified very briefly on this point and his testimony did not furnish any great amount of information. His testimony is typified by the following question and answer: Q. And there was $200,000.00 of common stock, and $800,000.00 of preferred at 6 1/2 percent. Now, will you tell us why, in 1939 - just tell us in your own words - the purpose of this change-over from preferred stock to the twenty debentures? A. Well I think there were two or three considerations. One was the idea that they [meaning his brothers and sister whose personal holding companies owned a large part of the preferred stock] wanted a permanent income, if possible. The second might have been that we were considering - always considering the possibility of the sale of the company. We are not greatly impressed with this testimony as showing the business purpose of the corporation in making the exchange, *501 and have not considered it as sufficient justification for making findings of fact as to what business purpose actuated the corporation in making the exchange. However, it seems to us that when we have facts brought before us which show that a corporation and its preferred stockholders did in fact make an exchange whereby all the preferred stock was taken up and cancelled and debenture bonds substituted therefor bearing interest at 6 per cent per annum, payable semi-annually, we must recognize the change and allow the interest deduction under the provisions of section 23(b), Internal Revenue Code. Of course if the indebtedness represented by the debenture bonds is a sham indebtedness, and the interest coupons attached to the bonds represent sham interest obligations, the deduction claimed would not be allowable. But the facts which have been stipulated seem to us to show clearly that the indebtedness created by the bonds was a real indebtedness and the interest coupons attached to the debentures represented a bona fide agreement to pay interest according to the tenor thereof. If a corporation and its preferred stockholders for reasons satisfactory to themselves agree upon an exchange *502 of preferred stock for debenture bonds, then it seems to us that such is business purpose enough and we need look no further, provided of course that the obligation created by the bonds is genuine. Cf. Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792; John Kelley Company, 1 T.C. 457. It has been stipulated by the parties that: At a meeting of the Directors held on June 16, 1939, the officers were authorized, subject to the approval of the stockholders, "to make and create an issue of 6% bonds of which the aggregate principal amount shall be limited to $800,000.00 which bonds shall be known as 6% Twenty Year Debentures and which shall be dated as of the First day of July, 1939, and shall bear interest at the rate of 6% per annum, payable semi-annually on the First Days of January and July in each year, and which shall be issued in coupon form with each interest coupon attached and in such denomination as said officers shall deem advisable, and which said bonds shall mature for payment in the principal amount on the 1st day of July, 1959." The provisions of this corporate resolution were carried out and we know of *503 no reason why we should refuse to recognize the validity of the indebtedness created by the debentures which were issued. Certainly the exchange and cancellation of 6 1/2 percent preferred stock having a par value of $100 per share and redeemable at $105 would be a sufficient consideration for the exchange of debentures of an equivalent face amount bearing 6 per cent interest and redeemable at $100. We do not understand the Commissioner to contend otherwise. His contention seems to be, as we have stated, that the lack of a sufficient business purpose to justify the exchange has not been shown and that for this reason the indebtedness should not be recognized. The petitioner in its brief gives the following reasons why the debentures involved should be held to evidence an indebtedness on which petitioner agreed to pay interest, and not preferred stock on which dividends were to be paid only out of profits: (a) The name given to the instrument * * * "6% Twenty Year Debentures" (b) The intent is very clear from the minutes, the testimony and the instrument itself that these debentures were the outright obligation of the corporation, established a debtor and creditor relation and were *504 not stock. (c) The debentures have a definite maturity date - July 1, 1959 - and the corporation obligated itself, without restriction, to pay the principal on that date. (d) The source of payment is not limited. The corporation is bound to pay both principal and interest as it becomes due without regard to earnings, surplus or the financial condition of the company. (e) While the claim of the debenture holders is subordinate to other general creditors it is superior to the stockholders. (f) The holders of the debentures obviously have the right to resort to suit to enforce payment of either principal or interest if not paid on the due date. (g) Under no circumstances do the holders of the debentures have any voting power or voice in the management of the corporation. We think petitioner must be sustained in its contention that the debenture bonds evidenced an indebtedness and that the interest which accrued thereon during the taxable period was deductible. Commissioner v. O.P.P. Holding Corp., 76 Fed. (2d) 11, affirming 30 B.T.A.; Commissioner v. Proctor Shop, Inc., supra. In addition to the contention we have *505 already stated, the Commissioner apparently contends in his brief that because the debenture bonds were made subordinate to the claims of all other creditors of the corporation, both those who held claims prior to the date of the debentures and those claims which arose afterward would destroy the character of the debentures, in so far as their representing indebtedness was concerned. The opinions of the Board of Tax Appeals, and the Courts, seem to the contrary. Commissioner v. O.P.P. Holding Corp., supra;I. Unterberg & Co., 2 B.T.A. 274; Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612; John Kelley Co., supra. The Commissioner urges in his brief as two cases which are in point in his favor the following: Leasehold Realty Co., 3 B.T.A. 1129; Ticker Publishing Co., 46 B.T.A. 399. We think these two cases are clearly distinguishable on their facts. In the Leasehold Realty Co. case the certificate involved was issued in the ordinary form of a preferred stock certificate. It represented a part *506 of the authorized capital stock of the corporation and it provided for quarterly dividends which were cumulative but payable only out of profits. It is true that the stock certificate provided restrictions as to the incurring of further indebtedness by the corporation but we do not think that fact is of any controlling importance and has no bearing on the issue we have here before us. An examination of the Ticker Pubishing Company case shows that there was no existing debt owing from the corporation to the bondholders and that no consideration passed between them when the bonds were issued. The bonds were not issued in exchange for stock but rather were in the nature of a dividend. They were issued solely because personal differences had arisen between the stockholders and they desired to withdraw part of the corporation's assets. We did say that while the bonds were a liability of the corporation there was no debt, but we went further in our opinion and stated that such a fact was immaterial in that case because the so-called "income bonds" were, in fact, preferred stock and did so in the following language: Here the parties were very careful to provide that the so-called interest *507 on the bonds was payable only out of net profits computed after creating a reserve for unexpired subscriptions. Thus they were like preferred stock, which does not give the holder any right to income except out of earnings or to his capital on a specified maturity date. Petitioner contended that the liability of Ticker to pay principal and interest to the extent of earnings gave the bonds a maturity date, and fixed the liability to pay. This was not a definite maturity date or a liability to pay regardless of net profits. The distinction is one which the courts in the cited cases point to as a strong indication of intent to issue preferred stock rather than an evidence of indebtedness. For the reasons stated above we sustain petitioner in the only assignment of error alleged in the petition. Decision will be entered under Rule 50.